UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 07-132ML |
| | ) | |
| MICHAEL DITOMASSO | ) | |

---

MOTION TO DISMISS INDICTMENT

Now comes Michael DiTomasso, the Defendant in the above captioned matter, by and through his counsel, and pursuant to Rule 12(b)(3)(B) of the Federal rules of Criminal Procedure, moves this Honorable Court to dismiss the present indictment. As grounds thereto Mr. DiTomasso states that the indictment fails to invoke this Court's jurisdiction or detail an offense committed by Mr. DiTomasso. Attached is Mr. DiTomasso's memorandum of law in support of this motion which more fully explains this indictment's shortcomings.

Respectfully submitted
Michael DiTomasso
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Milind Shah, Assistant United States Attorney, on December 7, 2007.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 07-132ML |
| | ) | |
| MICHAEL DITOMASSO | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT

## I. INTRODUCTION

Mr. DiTomasso has moved to dismiss the present indictment. The government has charged that Mr. DiTomasso failed to comply with the Federal Sex Offender Registration and Notification Act ("SORNA") by failing to register as a sex offender with Rhode Island authorities during the time period of the "[b]eginning of March 2007 and continuing through April 4, 2007," when he was required to so register per SORNA, and did travel in interstate commerce. The indictment states that Mr. DiTomasso's failure to register violated 18 U.S.C. § 2250.

### A. Facts Alleged

According to the government's complaint affidavit, the Commonwealth of Massachusetts convicted Mr. DiTomasso of certain sex offenses in 1995. Subsequently the Commonwealth required him to register as a sex offender under Massachusetts law. Mr. DiTomasso did register with the Milford Police Department, MA, in 1997, and last registered with Milford Police on October 17, 2006. The government states that this last registration form warned Mr. DiTomasso of the following:

> You are advised that you must notify, in writing, the Sex Offender Registry Board or the Police Department in the city or town in which you reside not less than 10 days prior to any change in residence, employment, or attendance at an institution of higher learning. You are further advised that you are required to immediately contact and advise of your presence, the appropriate authority in any other state in which you locate yourself for the purpose of

> residence, employment, or attendance at an institution of higher learning. Failing to do so may subject you to criminal prosecution.

No other warning, in particular no SORNA warning, was issued to Mr. DiTomasso.

The Milford Police contacted the Woonsocket Police Department, RI, on March 19, 2007, reporting that Mr. DiTomasso may have moved to 410 Wood Avenue of that city. The Woonsocket Police found Mr. DiTomasso near the Wood Avenue address on March 27, 2007. Officer Coupe, Woonsocket Police Department, allegedly told Mr. DiTomasso that he needed to register at the Woonsocket Police station within a week if he intended to live at the house. As of April 4, 2007, Mr. DiTomasso remained properly registered at his Milford home and had not registered in Woonsocket. Officer Coupe then went to the Wood Avenue house and arrested Mr. DiTomasso for failing to register in Woonsocket under Rhode Island law.

B. SORNA

The Adam Walsh Child Protection and Safety Act of 2006 promulgated new standards for sex offender registration with the intent to implement these standards nationwide. Congress declared SORNA's purpose as to protect the public from sex offenders and offenders against children. 42 U.S.C. § 16901 (specifying 17 heinous attacks and murders in the introduction). The statute imposes broad directives on the states and individuals it classifies as "sex offenders."

The statute requires the states to maintain a sex offender registry in compliance with SORNA. 42 U.S.C. § 16912. It requires the states to collect extensive information from each registrant. 42 U.S.C. § 16914.[1] It directs the state to make failing to register a felony offense. 42

---

[1] The required information includes:

1. Name and sex of offender;
2. Social security number of the offender;
3. Address of each residence at which the offender resides;
4. Name and address of offender's employer;
5. Name and address of school at which offender will be a student;
6. License plate number and vehicle description of auto operated or owned by offender;
7. Physical description of the offender;
8. Text of the statute provision violated by the offender which resulted in registration;
9. Offender's complete criminal history, probationary status, and warrant status;
10. Current photograph of the offender;

U.S.C. § 16913(e). It also directs specific classifications for certain type of offenses while increasing the types of offenses requiring offenders to register. 42 U.S.C. § 16911. The law also created a new Federal Failure to Register crime which exposes an unregistered sex offender to a 10 year felony. 18 U.S.C. § 2250. The statute penalizes those sex offenders who are required to register under SORNA, who knowingly fail to register, or update their registration, and who travel in interstate commerce. 18 U.S.C. § 2250.

The implementation of the SORNA statutory scheme, however, is not without its quirks. First, Congress has set forth deadlines for states to implement SORNA. 42 U.S.C. § 16924 (initial deadline of July 27, 2009). As a carrot to the states, Congress tied certain federal funding to the timely implementation. 42 U.S.C. § 16925. At this time, 15 months after its passing, only the State of Ohio has substantially implemented SORNA. Second, and even more distinctly quirky, Congress delegated to the Attorney General the power to determine how SORNA would apply to sex offenders convicted of their offenses prior to its implementation, and how those individuals would be notified and registered under SORNA. *See* 42 U.S.C. § 16913(b) & (d); 42 U.S.C. § 16917(a) & (b). The Attorney General did not exercise this power until February 28, 2007, when he issued his interim rule.

The interim rule indicates that SORNA applies to all sex offenders regardless of when the committed their predicate offenses. 28 C.F.R. 72.3. But, the interim rule also created ambiguities with regard to when the failure to register statute applied. For example, it is not clear whether § 2250 applies to offense conduct prior to July 27, 2006, or whether it applies to offense conduct between that date and the issuance of the Attorney General's interim rule on February 28, 2007, and also which conduct sets the offense date, the interstate travel or the failure to register. These questions have not yet been addressed by the First Circuit Court of Appeals, or any other Court of

---

11. Offender's finger and palm prints;
12. Offender's DNA;
13. Photocopy of the offender's driver's license or state issued identification card;
14. Any other information designated as necessary by the United States Attorney General.

42 U.S.C. § 16914.

Appeals.[2]

In addition to those questions, the interim rule left open the issue of notice and registration for persons convicted prior to SORNA. The statute directs the government to provide notice to and to register particular sex offenders. 42 U.S.C. § 16917. It specifically tasks the Attorney General to "prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a)." 42 U.S.C. § 16917(b). Those individuals, including Mr. DiTomasso, are offenders who were not in custody at the time the interim SORNA rules were promulgated. To date the Attorney General has not complied with SORNA by failing to "prescribe rules" for notifying pre-SORNA offenders.

The Attorney General also issued the proposed Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking Guidelines ("SMART") on May 30, 2007, to provide assistance to states implementing SORNA. 72 Fed. Reg. at 30210. A state is not deemed to have implemented SORNA until it carries out the requirements of SORNA as prescribed in SMART and the SMART Office, DOJ, has confirmed that fact. 72 Fed. Reg. at 30213-14. Rhode Island has not implemented SORNA under any measure.

The statute, SORNA, also creates certain obligations for "sex offenders." It defines a sex offender as an individual convicted of a "sex offense." 42 U.S.C. § 16911(1). It defines sex offense as a "criminal offense" which includes an element involving sexual contact or a sexual act. 42 U.S.C. § 16911(5)(A)(1). "Criminal offense" includes only purely intrastate offenses. 42 U.S.C. § 16911(6). The statute then directs such individuals to register with state authorities in compliance with SORNA, provide extensive personal information, and periodically appear in person before the state authority. 42 U.S.C. §§ 16913(a), 16914, & 16916. The statute requires this registration without regard to interstate activity, therefore purporting to regulate purely intrastate activities.

## II. ARGUMENT

### A. SORNA IS NOT APPLICABLE TO MR. DITOMASSO BECAUSE RHODE

[2] A number of district courts have addressed some of the problems with this statute and its enforcement/prosecution. A list of cases appears in the attached addendum.

ISLAND HAS NOT IMPLEMENTED THE LAW

1. The Attorney General Has Not Promulgated Regulations Making the Act Retroactive to Persons Convicted Before its Implementation in a Particular State

Although SORNA was signed into law on July 26, 2006, Congress did not name a precise date upon which the sex offender provisions are to be effective, other than to state a deadline of July 27, 2009, for implementation of the Act by all jurisdictions. Instead, Congress delegated to the Attorney General the authority to specify the retroactive applicability of SORNA to both individuals who were "convicted before July 27, 2006," and those who were "convicted before . . . its implementation in a particular jurisdiction." 42 U.S.C. §§ 16913(d).

The Attorney General issued his interim rule providing that SORNA is applicable to those convicted before July 27, 2006. 27 C.F.R. § 72.3. But the Attorney General has not issued a regulation declaring that SORNA applies to those convicted before the Act is implemented in a particular state. Thus, no authority exists making SORNA retroactive in jurisdictions that have yet to do what the Act requires. Moreover, the Attorney General's SMART Guidelines affirmatively indicate that SORNA is not effective in pre-implementation jurisdictions. The following language makes plain that sex offenders with "pre-SORNA implementation convictions," like Mr. DiTomasso, have a duty to register *only after* the jurisdiction implements the federal law:

> With respect to sex offenders with pre-SORNA or pre-SORNA implementation convictions who remain in the prisoner, supervision, or registered sex offender populations *at the time of implementation* . . . jurisdictions should endeavor to register them with SORNA quickly as possible.

72 Fed. Reg. at 30228 (emphasis added). The SMART guidelines plainly show SORNA was not intended to be enforced until after the states had implemented the law's requirements.

In order for SORNA to approach Congress's intent in any effective manner (that is to provide protection to the public through registering convicted sex offenders on a national level), the states must implement its requirements within their jurisdictions. Rhode Island has not implemented SORNA. As noted by the Attorney General in the SMART Guidelines, a jurisdiction has not implemented SORNA until it has "carrie[d] out the requirements of SORNA as interpreted and

explained in these Guidelines," and the SMART Office has determined that it has done so. 72 Fed. Reg. at 30213-30214. The SMART Office cannot certify Rhode Island's compliance because the state law has not substantially implemented the SORNA requirements.[3] Since Rhode Island has not implemented SORNA's requirements into its state law Mr. DiTomasso cannot be subject to the law's constraints.

2. Punishing Mr. DiTomasso For A Law Not Yet Applicable To Him Violates The *Ex Post Facto* Clause Of The Constitution

Punishing Mr. DiTomasso for failing to register under SORNA, a law not yet applicable to him, would violate the *Ex Post Facto* Clause of the Constitution. *See* U.S. CONST., Art. I, § 9, cl. 3. In *Weaver v. Graham,* the United States Supreme Court explained that the *Ex Post Facto* Clause prohibits punishment of a defendant "for an act which was not punishable at the time it was committed." 450 U.S. 24, 28 (1981). The Supreme Court reasoned: "Critical to relief under the *Ex post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when . . . punishment [is increased] beyond what was prescribed when the

[3] For example, Rhode Island has a Sex Offender Board that determines the level of community notification due an offender and the offender may contest the determination, while SORNA designates the offender's notification "Tier" by statute with no redress. *Compare* R.I. Gen. L. § 11-37.1-6, *with* 42 U.S.C. §16917. The SORNA Tier system also determines the registration time periods (Tier I - 15 years, II - 25 years, III - life). 42 U.S.C. § 16917. Rhode Island has a 10 year registration period which escalates to life only if the Board designates the offender a sexually violent predator. R.I. Gen. L. § 11-37.1-4. Also, Rhode Island only requires juveniles to register if the Board designates them as a sexually violent predator and then only for 15 years; SORNA places juveniles into the same Tier system for registration as adults. *Compare* R.I. Gen. L. § 11-37.1-4, *with* 42 U.S.C. §16917. The federal statute also requires registration for more crimes than under the Rhode Island law. *Compare* 42 U.S.C. §16911, *with* R.I. Gen. L. § 11-37.1-2.

Massachusetts also differs substantially to SORNA. Massachusetts law provides for a Sex Offender Registry Board, similar to RI, that determines the level of community notification and predator status (Mass. Gen. Laws ch. 6, § 178K), allows offenders may contest their classification (Mass. Gen. Laws ch. 6, § 178L), allows for change in the offenders status (Mass. Gen. Laws ch. 6, § 178M), has two periods for registration (Mass. Gen. Laws ch. 6, § 178G (20 years or life)), and, as stated, has a shorter potential penalty of up to five years in prison (Mass. Gen. Laws ch. 6, § 178H).

crime was consummated." *Id.* at 30-31. Criminally punishing Mr. DiTomasso for failure to register under SORNA when he had no such duty to register directly violates this principle.

### 3. Punishing Mr. DiTomasso For A Law With Which He Is Unable To Comply Violates The Due Process Clause Of The Constitution

SORNA explicitly provides that one is "unable" to register in a jurisdiction where the Act has yet to be implemented. 42 U.S.C. § 16913(d). In doing so, the statute recognizes that where a state, like Rhode Island, has not passed legislation conforming its sex offender registry with SORNA's requirements, it is impossible for a sex offender in that jurisdiction to register in compliance with SORNA. Simply put, no state apparatus exists through which the offender can come into compliance with SORNA. Criminalizing the failure to do something that is impossible to do violates the Due Process Clause's guarantee of fundamental fairness. *See United States v. Dalton*, 960 F.2d 121, 124 (10th Cir. 1992) (it is a violation of fundamental fairness to hold someone liable for a crime when an essential element of the crime is his failure to perform an act that he is incapable of performing). Because it was, and remains, impossible for Mr. DiTomasso to comply with SORNA in Rhode Island, punishing him for failing to register under that statute violates his due process rights.

## B. MR. DITOMASSO DID NOT KNOWINGLY FAIL TO REGISTER BECAUSE THE GOVERNMENT FAILED TO NOTIFY HIM OF ANY OBLIGATION HE MAY HAVE UNDER SORNA

Mr. DiTomasso could not comply with SORNA as applied to him in this instance. He traveled from Massachusetts to Rhode Island at a time prior to the issuance of the Attorney General's interim rule. At that time he was registered in compliance with Massachusetts authorities. No governmental authority notified him of his obligations under SORNA, and, neither Massachusetts nor Rhode Island had implemented SORNA at that time (or has since). It was impossible for Mr. DiTomasso to comply with SORNA during the alleged period.

The Fifth Amendment of the United State Constitution requires the government to provide due notice and fair warning in its enforcement and prosecution of the laws which affect liberty rights.

U.S. CONST. Amend. 5 (Due Process Clause). Criminal proceedings require the government to provide Mr. DiTomasso with due process of the law in matters affecting his liberty. Here that means actual notice to Mr. DiTomasso as to his obligations under SORNA. The statute directs the Attorney General to effectuate notice, 42 U.S.C. § 16917(b), but his interim rule lacks any provision. The government plainly understands this duty because the Department of Justice included it as part of its SMART implementation guidelines. 72 Fed. Reg. at 30227-28 (instructing registration authorities to provide updated information regarding SORNA to registrants). Massachusetts failed to notify Mr. DiTomasso of any SORNA requirements when he registered in October, 2006. As a result, the government has failed to give Mr. DiTomasso due notice of any SORNA obligation.

Prosecution of this statute demands actual notice in this case because Mr. DiTomasso is not accused of an affirmative act, but an omission. The United States Supreme Court has already held in favor of Mr. DiTomasso's position under similar circumstances. In *Lambert v. California*, the Court struck down a conviction for the defendant's failure to register as a convicted felon on due process grounds. 355 U.S. 225, 228-230 (1958). The Court held that the concept of due process includes the requirement of notice, and notice is required when a penalty may be exacted not from a defendant's action, but his failure to act. *Id*. Mr. DiTomasso is not registered in compliance with SORNA because the government failed to notify him about SORNA.

The Commonwealth of Massachusetts did instruct Mr. DiTomasso to register with its sex offender registry board in 1997. Thereafter it notified Mr. DiTomasso of changes in the Commonwealth's laws concerning registration requirements. In October, 2006, it attached additional information to Mr. DiTomasso's registration paperwork to ensure he knew of his obligations under Massachusetts law. The Commonwealth did not, however, tell Mr. DiTomasso about SORNA (which had been passed by Congress several months earlier). Mr. DiTomasso is charged with violating SORNA in Rhode Island, which also failed to notify him of any requirements under SORNA. The lack of notice should not necessarily shock the Court considering that neither state had implemented SORNA as of March, 2007, and has not since. The statute makes it unlawful to fail to register in accordance with SORNA. But, Mr. DiTomasso could not have complied, as stated *supra*, due to the lack of implementation by either Massachusetts or Rhode Island.

As stated above:

> With respect to sex offenders with pre-SORNA or pre-SORNA implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation . . . jurisdictions should endeavor to register them with SORNA quickly as possible, including fully instructing them about the SORNA requirements, . . .

72 Fed. Reg. at 30228. Per the SMART guidelines, Mr. DiTomasso's knowledge of his obligations under Massachusetts law is not enough.[4] This is not a case of claiming ignorance of the law as a defense. The government has failed to provide notice of SORNA to affected offenders and this Court must take that into consideration.

No government agent has provided the required notice to Mr. DiTomasso of his SORNA obligations. The Court cannot waive the government's obligation to provide notice based on Mr. DiTomasso's knowing state registration because SORNA itself requires actual notice. Absent that notice, punishing Mr. DiTomasso's failure to act violates his Constitutional due process rights.

### C. PROSECUTION OF MR. DITOMASSO HERE VIOLATES HIS CONSTITUTIONAL EX POST FACTO PROTECTIONS BECAUSE THE GOVERNMENT SEEKS TO CRIMINALIZE CONDUCT PRE-DATING SORNA

The United States Constitution prohibits Congress from passing any ex post facto laws. U.S. Const. Art. I §9. Specifically, the ex post facto prohibition forbids Congress and the States from enacting any law that imposes punishment for an act that was not punishable at the time it was committed, or that imposes punishment in addition to that which was originally prescribed at the time of the criminal conduct. *Weaver v. Graham*, 450 U.S. 24 (1981) (*supra*). In *Weaver*, the Supreme Court stated:

---

[4] Other district courts have stated that defendants convicted prior to SORNA, who were already required to register under various state laws, were on notice of SORNA by way of their existing obligations to register. *See, e.g., United States v. Roberts*, 2007 U.S. Dist. LEXIS 54646 (W.D. Va. July 27, 2007) (stating ignorance of the law is no defense)*; United States v. Hinen*, 487 F. Supp. 2d 747, 753-755 (W.D. Va. 2007). *But see United States v. Barnes*, 2007 U.S. Dist. LEXIS 53245 (S.D.N.Y. July 23, 2007). Those decisions, however, fail to give meaning and power to the language of the statute (he who "knowingly fails to register or update a registration as required by [SORNA]" (18 U.S.C. § 2250(a)(3))), Congress's direction to the Attorney General to provide notice (42 U.S.C. § 16917(b)), or the SMART guidelines detailing how the states should go about providing notice (72 Fed. Reg. 30228).

> [O]ur decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: It must be retrospective. That is it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. . . . Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

450 U.S. at 29-30 (citations omitted).

The government here has alleged that Mr. DiTomasso established residency in Rhode Island "in or around the first week of March, 2007." Gov't Complaint Affidavit, ¶¶ 19 & 20. The government has not alleged any specific date of interstate travel. The Court may, however, reasonably conclude that his travel from Massachusetts to Rhode Island occurred prior to establishing a residency and therefore before February 28, 2007, the date of issuance of the Attorney General's interim rule. Applying this statute to Mr. DiTomasso, with regard to his pre-SORNA travel, violates the Ex Post Facto Clause because it punishes him for an act which was not punishable at the time of commission. Prior to February 28, 2007, Mr. DiTomasso was properly registered under Massachusetts law, and subject to a maximum penalty of five years in prison if he failed to register. Mass. Gen. Laws ch. 6, § 178H (a)(1).[5] The federal failure to register statute, 18 U.S.C. § 2250(a), establishes a maximum punishment of ten years in prison, thus increasing Mr. DiTomasso's criminal exposure in violation of ex post facto. SORNA could not apply to Mr. DiTomasso until February 28, 2007, if at all. His prior travel is not punishable under SORNA, and, while the combination of travel and failure to register after February 28, 2007, might properly fit under § 2250(a) (if Rhode Island had implemented SORNA, which it has not, and Mr. DiTomasso had received notice of his SORNA obligations, which he did not), the government has not presented that case. This prosecution must be dismissed because the failure to register statute, as applied in this instance, violates the Ex Post Facto Clause by punishing conduct prior to the implementation

[5] The penalty under Rhode Island law for failing to register is up to ten years in prison (R.I. Gen. Laws § 11-37.1-10), but Mr. DiTomasso was not subject to this requirement at the time he traveled.

of SORNA and increasing the potential punishment.

The government has already suggested that the actual date of travel is irrelevant because failing to register is a continuing offense. That argument is without merit. The statute, SORNA, requires that a person update changes in registration information within three days. 42 U.S.C. § 16913. The crime is complete at that point and does not continue indefinitely. For example, the Supreme Court previously held that the crime of failing to register for the draft was not a continuing offense and was complete after the person turned 18 and five days old, in accordance with the grace period within the statute. *Toussie v. United States*, 397 U.S. 112, 115 (1970) (noting no explicit language in the statute compelling a finding of a continuing offense and no Congressional intent for a continuing crime). Likewise, other district courts deciphering SORNA's registration requirements have found the offense not to be of a continuing nature; the offense is complete upon the passing of the registration deadline. *See, e.g., United States v. Bobby Smith*, 481 F. Supp. 2d 846, 852 (E.D. Mich 2007). While the government alleges the failure to register occurred after February 28, 2007, the travel still occurred before the interim rule and therefore the three day window may have also closed prior.

The government has argued in other district court cases that ex post facto rules do not apply to SORNA because it is regulatory in nature, not punitive. *See, e.g., United States v. Lawrence*, 2007 U.S. Dist. LEXIS 75518, *7-11 (W.D. Okla., September 5, 2007); *Hinen*, 487 F.Supp. 2d at 755-56. The government relied on a Supreme Court decision upholding Alaska's retroactive sex offender registration law because it was civil in nature, not punitive. *Smith v. Doe*, 538 U.S. 84, 105-06 (2003). While SORNA registration requirements may be regulatory, the failure to register law, 18 U.S.C. § 2250, is a crime. Congress codified this part of the statute separately in the criminal code, Title 18, purposely. Congress placed SORNA and its predecessor, the Jacob Wetterling Act, both in the Public Health and Welfare section of the Federal Code, Title 42, while designating the failure to register statute as a crime. This codification clearly presents Congress's will on this point. *See United States v. Bobby Smith*, 481 F. Supp. 2d at 852-53. As a criminal statute, ex post facto protections apply.

The Ex Post Facto Clause prohibits criminal prosecution of conduct predating the law and also the increase of punishment for such conduct. The failure to register statute, as applied to Mr.

DiTomasso, does both; his travel predates the Attorney General's interim rule and the statute increased his potential criminal liability over and above existing Massachusetts law. The Court must dismiss this indictment based on the violation of the Ex Post Facto Clause of the Constitution.

D. SORNA AND FAILURE TO REGISTER STATUTE SEEK TO CRIMINALIZE MR. DITOMASSO'S WHOLLY NON-ECONOMIC INTRASTATE ACTIVITY IN VIOLATION OF THE RESTRICTIONS ON CONGRESS'S COMMERCE CLAUSE POWER

The SORNA legislation violates the restrictions on Congress's power to regulate commerce in two ways. First, SORNA directs the states and individuals to comply with its registration requirements with no nexus to any interstate commerce. Second, the criminal offense of failing to register, 18 U.S.C. § 2250, fails to connect the regulated activity to its interstate travel element. Article I, § 8, of the United States Constitution grants Congress the power to regulate commerce within and between the several states, indigenous peoples, and foreign nations. U.S. CONST. Art. I, § 8, cl. 3. The Constitution does not grant Congress a general police power; the general police power is reserved for the States. *See* U.S. CONST. Amend X. The SORNA legislation exceeds Congress's power.

Congress can only enact legislation within the powers granted to it by the Constitution. *United States v. Lopez,* 514 U.S. 549, 552 (1995). The Supreme Court has addressed the limits of the commerce power in several contemporary cases. In *Lopez* the Court struck down Congress's attempt to prohibit the possession of firearms within 1000 feet of a school without any qualification. 514 U.S. 549 (1995). The Court found that statute lacking the appropriate nexus between the possession near a school and interstate commerce. *Id*. at 551. In *Gonzales v. Raich*, the defendant challenged the reach of the commerce power against the home cultivation of medicinal marijuana. 545 U.S. 1 (2005). The Controlled Substances Act criminalizes the possession and distribution of marijuana, a commodity affecting interstate commerce. *See* 21 U.S.C. § 841. In *Raich* the Court held that marijuana grown at home for the medicinal use of the grower only, still presented a sufficient effect on interstate commerce to warrant regulation. *Id*. at 17-19 (essentially, the grower's use of homegrown marijuana affected commerce because he did not purchase the drug on open,

illegal, market).[6]

A third case indirectly presented both sides of the coin. In *United States v. Morrison*, the Court considered Congress's commerce reach in the context of providing a civil action for victims of domestic violence. 529 U.S. 598 (2000). The government argued that domestic violence has significant effects on interstate commerce primarily by fueling the wheels of criminal justice and effecting the employment and travel of victims. *Id*. at 612-15. The statute did not have any other particular language linking the cause for relief with interstate commerce. The Court held that the statute did not properly exercise Congress's commerce power. *Id*. Interestingly, the statute in question, like SORNA, also provided a criminal cause of action when the perpetrator travels in interstate commerce with the intent to commit domestic violence. 18 U.S.C. § 2261(a)(1). Although not at issue in *Morrison*, that statute provides a definitive and clear connection between the crime and interstate commerce, and thus properly exercises Congress's Commerce Clause power.

The Supreme Court considers three categories of action properly subject to Congress's power under the Commerce Clause: 1) the use of the channels of interstate commerce; 2) the instrumentalities of interstate commerce; and 3) action which has a substantial relation to interstate commerce. *See Lopez*, 514 U.S. at 558-559. Neither SORNA's registration requirement nor the criminal failure to register offense qualify as proper subjects for Congress's power to regulate interstate commerce.

The third prong above requires that the regulated activity substantially affect interstate commerce. *Lopez*, 514 U.S. at 560. Substantial does not necessarily mean a sizable effect (*see Raich* & *Wickard*, *supra*), but it must be an actual effect. *See Morrison*, 529 U.S. at 612-13 (costs of crime and victim impact on commerce not substantial effects). The Supreme Court struck down the statutes in *Lopez* and *Morrison* because the regulated behavior itself lacked sufficient effect on interstate commerce. In *Perez v. United States*, however, the Court upheld the statute outlawing extortionate credit transactions, even when purely intrastate, because credit and banking clearly affect interstate commerce. 402 U.S. 146, 153-55 (1971). Sex offender registration is purely a state

---

[6] *See also Wickard v. Filburn*, 317 U.S. 111, 128 (1942) (extending commerce power to regulate intrastate production of homegrown, and consumed, wheat given small but real possibility of affect on interstate commerce).

police function which has no effect on commerce, interstate or otherwise.

Congress added the jurisdictional travel clause in § 2250 in an effort to comply with its Commerce Clause powers. *See Lawrence*, 2007 U.S. Dist. LEXIS 75518, *15-20 (W.D. Okla., September 5, 2007); *Hinen*, 487 F. Supp. 2d at 758; *accord* Government's Objection to Defendant's Motion for Bill of Particulars Brief at 4. Such a jurisdictional clause may establish the connection between commerce and the regulated behavior. *See, e.g.,* 18 U.S.C. § 2261 (traveling interstate with the intent to commit an act of domestic violence). But, ultimately whether the regulated activity sufficiently affects interstate commerce is a legal question. *Morrison*, 529 U.S. at 614-15; *citing Lopez*, 514 U.S. at 557. If the Court feels that this statute adequately relates to interstate commerce, following the design of this statute, Congress could literally federalize any typically state offense, without regard to actual interstate effect, by inserting the clause "and travels in interstate commerce."

Analyzing the SORNA registration requirements under the three *Lopez* prongs shows that SORNA does not conform to the boundaries of Congress's commerce power. First, no reasonable argument can be made that directing sex offenders to register with state authorities somehow relates to or affects the channels of interstate commerce. Second, SORNA's registration requirements apply regardless of interstate travel; in theory, if Mr. DiTomasso had never left Massachusetts he would still be bound to comply with SORNA even with no interstate travel. Congress exceeds its commerce power when its statutes purport to directly regulate purely interstate non-commercial activity. Lastly, SORNA's registration requirements seeks to regulate activity that has no substantial nexus to interstate commerce. The SORNA legislation's purpose is to protect the public from sex offenders. 42 U.S.C. § 16901. That purpose does not have any connection whatsoever to interstate commerce.

The criminal statute, 18 U.S.C. § 2250, also fails to properly invoke Congress's Commerce Clause power. This statute plainly does not regulate any channel or instrumentality of interstate commerce. Although the government may argue that the travel element of § 2250 brings the failure to register as a sex offender within the power of Congress to regulate persons in interstate commerce, that argument lacks merit. Congress can regulate persons in interstate commerce who possess intent to commit criminal acts. For example, the Travel Act, 18 U.S.C. § 1952, criminalizes interstate

travel with the intent to commit certain criminal acts in the destination state. *See also, supra,* 18 U.S.C. § 2261.[7] The travel requirement in § 2250, however, lacks the necessary link between the act of traveling in interstate commerce and the purported regulated activity of failing to register as a sex offender. Essentially, the statute does not require the defendant to have traveled in interstate commerce with the intent to avoid his registration requirements. This is no mere oversight because upholding this shortcoming would allow Congress to Federalize any and all state and local crimes by simply making it a crime for anyone who commits an offense to travel in interstate commerce. That clearly was not what the Framers had in mind.

To pass Constitutional muster this statue must have some connection between the regulated criminal activity and interstate commerce. Congress passed this law with the purpose of prosecuting individuals traveling in interstate commerce *with* the intent to thwart sex offender registration laws. The travel element does not sufficiently connect the interstate travel with the failure to register. Absent an actual affect on interstate commerce, this statute is unconstitutional. As applied to Mr. DiTomasso the statute is unconstitutional because it seeks to regulate his purely non-economic intrastate activity.

## E. THE FAILURE TO REGISTER STATUTE VIOLATES MR. DITOMASSO'S CONSTITUTIONAL RIGHT TO TRAVEL BECAUSE IT LACKS THE SUPPORT OF A COMPELLING GOVERNMENTAL INTEREST

The Constitution preserves an individual citizen's right to travel among and between the several states. *Saenz v. Roe*, 526 U.S. 489, 498 (1999)*; Shapiro v. Thompson*, 394 U.S. 618, 629-31 (1969); *United States v. Guest*, 383 U.S. 745, 757 (1966). The right to travel is an important and fundamental Constitutional right which can be "[asserted] against private interference as well as governmental action; . . . a virtually unconditional personal right guaranteed by the Constitution to us all." *Shapiro*, 394 U.S. at 643 (Stewart, J., concurring). Our Constitutional concept of liberty

[7] *See also* 18 U.S.C. § 2119 (automobile involved traveled in interstate commerce); 18 U.S.C. § 2251(a) (implements used in the production of child pornography traveled in interstate commerce); 18 U.S.C. § 922(g) (firearm traveled in interstate commerce); 18 U.S.C. § 1951 (obstruction of interstate commerce by robbery or extortion); and 18 U.S.C. § 844(i) (arson by fire of a building used in or affecting interstate commerce).

guarantees citizens' freedom to travel from one end of the country to the other without unreasonable governmental restriction by statute or regulation. *Saenz*, 526 U.S. at 499, *citing Shapiro*, 394 U.S. at 629. The right to travel protects the right of a citizen of one state to enter and leave another state (*see Guest*, 383 U.S. 745), the right to be treated as a welcome visitor rather than an unwanted alien in another state (U.S. Const. Amend. IV - Privileges and Immunities Clause), and the right to be treated the same as citizens of the other state should the traveler decide to become a resident (U.S. Const. Amend XIV - Privileges and Immunities and Citizenship Clauses). *Saenz*, 526 U.S. at 500-03. Congress may restrict an individual's right to travel pursuant to a compelling government interest.

Congress may not, however, enforce a law which curtails this fundamental right of travel absent a compelling government interest. *See Shapiro*, 394 U.S. at 627, 634. The Supreme Court looked at the right to travel in the context of state residency requirements for public assistance, and, applying the strict scrutiny standard, struck down those statutes as unconstitutionally discouraging state to state migration. *Id*. at 622-27. It did not find the states' financial interests sufficiently compelling to restrict travel. Like those statutes, the failure to register statute also fails to present a compelling government interest sufficient to withstand strict scrutiny.

The main statute, SORNA, presents a government interest in registering convicted sex offenders, but the travel element in 18 U.S.C. § 2250 conceivably applies to any interstate travel at any time and is not narrowly tailored to specific travel engaged to thwart the registration process. The government's interest in registering sex offenders is not sufficiently compelling to restrict all travel and therefore this provision cannot pass strict scrutiny. Prosecution of Mr. DiTomasso under this statute violates his Constitutional right to travel.

## F. CONGRESS IMPROPERLY DELEGATED ITS LEGISLATIVE AUTHORITY TO THE EXECUTIVE BRANCH IN VIOLATION OF THE SEPARATION OF POWERS DOCTRINE

SORNA delegated to the Attorney General the authority to specify the applicability of the Act to sex offenders convicted before July 27, 2006. 42 U.S.C. § 16913. In addition, SORNA delegated to the Attorney General the authority to "prescribe rules for the notification of sex

offenders who cannot be registered in accordance with subsection (a)." 42 U.S.C. § 16917(b). The effect of this delegation of authority was to permit the Attorney General to legislate the scope of the Act's retrospective reach. The authority to legislate or make law, however, is entrusted solely to Congress. U.S. CONST., Art. I, §§ 1, 8. This authority carries with it a corresponding limitation: Congress cannot delegate its legislative authority to another branch of the government. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935) (explaining that "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested"); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421, 432 (1935) (observing that "[i]f the citizen is to be punished for the crime of violating a legislative order of an executive officer ... due process of law requires that it shall appear that the order is within the authority of the officer.").

The doctrine prohibiting Congress from delegating its authority to another branch is a necessary component of the separation of powers that underlies our tripartite system of government and the checks and balances inherent in our constitutional framework. *See Mistretta v. United States*, 488 U.S. 361, 380-81 (1989) (describing the separation of powers as essential to the preservation of liberty). In *Panama Refining Co.*, the Court invalidated a delegation of authority to the executive branch under the National Industrial Recovery Act ("NIRA") to prohibit the interstate transport of petroleum produced or withdrawn in violation of state law. 293 U.S. at 406, 432. The Court emphasized that the statute did not declare any policy with respect to the transportation of excess production, did not qualify the President's authority, did not establish any criteria governing the President's course, and treated disobedience as a crime. *Id*. at 415.

Similarly, in *A.L.A. Schechter Poultry*, the Court addressed another provision of NIRA which authorized the President to approve codes of fair competition from industry groups or prescribe such codes. 295 U.S. at 520-21. A violation of a code was a crime, with each day of the violation constituting a separate offense. *Id*. at 523. As in *Panama Refining Co.*, the Court focused on the absence of standards and restrictions in connection with the broad grant of authority. *Id*. at 542. Such concerns are particularly significant where, as here, the delegation involves criminal liability. *See Fahey v. Mallonee*, 332 U.S. 245, 249 (1947).

In this case, the delegation extended to the chief law enforcement officer of the United States the power to determine the retrospective scope of a criminal statute. In other words, it enabled the

executive branch to legislate the reach of a criminal statute with no limits on the Attorney General's exercise of his discretion. He was free to decide how far back the registration requirements should be extended, no matter how arbitrary his decision might be. This delegation is particularly troubling because retrospective legislation is disfavored and, in those limited circumstances where it is permitted, a legislative policy judgment need be manifest. In *INS v. St. Cyr*, 533 U.S. 289, 315-16 (2001), the Supreme Court stated:

> A statute may not be applied retroactively; . . . absent a clear indication from Congress that it intended such a result. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Accordingly, the first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively.

*Id*. at 316 (internal citations omitted). *See also Landgraf v. USI Film Products*, 511 U.S. 244, 271 (1994) (discussing the presumption against retroactive effect and emphasizing the need for clear language requiring retroactivity). Here, there is no indication that Congress made such a judgment. Rather, it improperly abdicated that legislative responsibility to the executive branch.[8]

Congress may, of course, obtain assistance from other branches of government, provided that the legislative act sets forth an intelligible principle that directs and fixes the discretion delegated to the agency or person. *See Mistretta*, 488 U.S. at 372, *citing J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). In the present case, the delegation is not limited to the implementation of the terms of SORNA, but permits the Attorney General to determine the very individuals to which SORNA applies, with no standards to guide this determination. This is precisely the type of delegation the Framers would have viewed as constitutionally impermissible. As a result, SORNA is unconstitutional under the non-delegation doctrine and the Indictment must be dismissed.

---

[8] On February 28, 2007, the Attorney General took advantage of this broad delegation of authority by issuing an interim rule that makes it "indisputably clear that SORNA applies to sex offenders (as the Act defines that term) regardless of when they were convicted." 72 FR 8894, 8896.

G. THE ATTORNEY GENERAL'S INTERIM RULE RETROACTIVELY APPLYING SORNA VIOLATES THE ADMINISTRATIVE PROCEDURE ACT BECAUSE IT WAS PROMULGATED WITHOUT PROPER NOTICE AND COMMENT

On February 28, 2007, as stated *supra*, the Attorney General issued a regulation purporting to retroactively apply SORNA to all persons convicted of a sex offense prior to July 27, 2006, the date Congress enacted SORNA. *See* 28 C.F.R. § 72.3. This regulation does not make SORNA applicable to Mr. DiTomasso because Rhode Island has yet to implement the Act. Nonetheless, even if the regulation makes SORNA applicable to Mr. DiTomasso, the Attorney General issued this regulation in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 533, by failing to provide public notice and a comment period.

The APA normally requires agencies to publish a proposed rule in the Federal Register and give interested parties the opportunity to submit comments and other relevant material before the rule becomes effective. 5 U.S.C. § 553(d). Generally, a substantive rule must be published in the Federal Register at least 30 days before it becomes effective. 5 U.S.C. § 553(d).

However, the APA permits agencies to enact rules without a notice and comment period for "good cause" where it is "impractical, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b). The " good cause" exception is to be narrowly construed and only reluctantly countenanced. The exception is not an escape clause; its use should be limited to emergency situations." *Utility Solid Waste Activities Group v. Environmental Protection Agency*, 236 F.3d 749, 754 (D.C. Cir. 2001) (omitting citations and quotations).

Here, the Attorney General erroneously relied upon the "good cause" exception in foregoing the public notice and comment period. The Attorney General claimed that notice and comment was "impractical, unnecessary, and contrary to public interest." 72 Fed. Reg. at 8896. In support of his assertion, the Attorney General stated that the "immediate effectiveness of the rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements." 72 Fed. Reg. at 8896. Moreover, the Attorney General explained that "[d]elay in the implementation of [the] rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders through prosecution and the imposition of criminal sanctions." 72 Fed. Reg. at 8896. However, these assertions have no basis even when evaluated

against the Attorney General's own manual interpreting the "good cause" exception under the APA.[9]

According to the Attorney General's Manual, a 30-day public notice and comment period is "impracticable" under the APA when "an agency finds that due and timely execution of its functions would be impeded by the notice otherwise required in [§ 553]." *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing Attorney General's Manual on the Administrative Procedure Act (1947) at 30-31). Here, a 30-day waiting period could not have delayed registrations or impeded the functioning of law enforcement agencies: the states are not obligated to comply with SORNA until at least July 2009. *See* 42 U.S.C. § 16924. More than a year after SORNA's enactment, states, including Rhode Island, have no mechanism in place to register sex offenders under SORNA. And the Attorney General's regulation provides no guidance on how states are to register sex offenders prior to implementation. Foregoing the 30-day waiting period did nothing to change this reality. Accordingly, a notice and comment period was not "impracticable."

Likewise, a notice and comment period was not "contrary to the public interest." The Attorney General's Manual provides that this ground is satisfied when "the interest of the public would be defeated by any requirement of advance notice." *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing Attorney General's Manual at 31). For the same reasons noted in the above paragraph, a waiting period would not have compromised the purported public interest here (expediting registrations), since the Attorney General's regulation plainly fails to achieve this result.

Finally, the notice and comment period was not "unnecessary." The Attorney General's manual explains that this term refers to "the issuance of a minor rule in which the public is not particularly interested." *Id.* (citing Attorney General's Manual at 31); *see also South Carolina v. Block*, 558 F. Supp. 1004, 1016 (D.S.C. 1983) ("unnecessary" exception is "confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public."). Certainly, an all-encompassing rule that purports to make SORNA retroactive to all offenders who ever committed a sex offense, and also impose significant changes to state law and responsibilities of state officials, fails to meet this definition of "unnecessary."

---

[9] Also, the Attorney General's delay of seven months between passage of SORNA and issuance of the interim rule belies any claim of urgency to register sex offenders.

For all the reasons noted above, the Attorney General had no "good cause" to excuse the APA's notice and comment period. Thus, the rule should be invalidated. *See Nat'l Org. Of Veterans' Advocates, Inc. v. Sec'y. of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2001) ("Failure to allow notice and comment, where required, is grounds for invalidating the rule.") (citing *Auer v. Robbins*, 519 U.S. 452, 459 (1997)).

H. SORNA FORCES STATES TO REGISTER SEX OFFENDERS BEFORE THEY HAVE AN OPPORTUNITY TO VOLUNTARILY COMPLY WITH THE LAW, THUS VIOLATING THE TENTH AMENDMENT

As previously discussed, SORNA does not impose a duty upon sex offenders to register in jurisdictions where SORNA has yet to be implemented. 42 U.S.C. § 16913(d). In turn, states have no obligation to register sex offenders as proscribed until they implement the statute. However, if this Court finds that SORNA forces Rhode Island to register sex offenders before it has an opportunity to voluntarily comply with SORNA, then the Act violates the Tenth Amendment of the Constitution.

It is well settled that the Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering federal law. *Printz v. United States*, 521 U.S. 898, 935 (1997). Here, SORNA gives the states until July 2009 to implement SORNA. 42 U.S.C. § 16924. Although Congress has provided that those states who do not implement SORNA by this deadline will lose a percentage of their federal spending, 42 U.S.C. § 16925(a), this contingency does not render SORNA void under the Tenth Amendment. The Spending Clause, U.S. Const. Art. I, § 8, cl. 1, permits Congress to "condition[] receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203 (1987) (citation and quotation omitted). Nonetheless, if SORNA requires states to register sex offenders now, then this forces states, like Rhode Island, to accept federally required sex offender registrations before they have an opportunity to choose to adopt the SORNA provisions voluntarily. This is exactly the type of commandeering that the Tenth Amendment prohibits.

The Supreme Court's opinion in *Printz*, provides helpful guidance here. In *Printz*, the Court invalidated a law requiring local law enforcement officials to conduct background checks of

prospective handgun purchasers. The Court held that "[t]he Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." 521 U.S. at 935. The local officials in *Printz* are analogous to the law enforcement officials who run state sex offender registries. Just as Congress cannot compel law enforcement to conduct federally mandated background checks, it cannot compel local law enforcement to accept registrations from federally mandated sex offender programs.

## III. CONCLUSION

The Court must dismiss this indictment. The Sex Offender Registration and Notification Act and the federal failure to register law are both unconstitutional in the specific application to Mr. DiTomasso and on their face. For all of the reasons presented Mr. DiTomasso asks the Court to grant this motion.

Respectfully submitted
Michael DiTomasso
By his attorney,

/s/ Kevin J. Fitzgerald, 5775

Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Milind Shah, Assistant United States Attorney, on December 7, 2007.

/s/ Kevin J. Fitzgerald

ADDENDUM

RELATED SORNA CASES

1. United States v. Patterson, 2007 U.S. Dist. LEXIS 83191, (D. Neb., November 8, 2007)

2. United States v. Howell, 2007 U.S. Dist. LEXIS 83224 (N.D. Iowa, November 8, 2007)

3. United States v. Pitts, 2007 U.S. Dist. LEXIS 82632, (M.D. La., November 7, 2007)

4. United States v. Carr, 2007 U.S. Dist. LEXIS 81700, (N.D. Ind., November 2, 2007)

5. United States v. Porter, 2007 U.S. Dist. LEXIS 81244 (E.D.N.Y., November 1, 2007)

6. United States v. Wilson, 2007 U.S. Dist. LEXIS 76722, (D. Utah, October 16, 2007)

7. United States v. Gill, 2007 U.S. Dist. LEXIS 76446, (D. Utah, October 15, 2007)

8. United States v. Ambert, 2007 U.S. Dist. LEXIS 75384 (N.D. Fla., October 10, 2007)

9. United States v. Beasley, 2007 U.S. Dist. LEXIS 85793 (N.D. Ga., October 10, 2007)

10. United States v. Lovejoy, 2007 U.S. Dist. LEXIS 72988 (D.N.D., September 28, 2007)

11. United States v. May, 2007 U.S. Dist. LEXIS 70709 (S.D. Iowa, September 24, 2007)

12. United States v. Deese, 2007 U.S. Dist. LEXIS 70677 (W.D. Okla., September 21, 2007)

13. United States v. Kent, 2007 U.S. Dist. LEXIS 69819 (S.D. Ala., September 20, 2007)

14. United States v. Cole, 2007 U.S. Dist. LEXIS 68522 (S.D. Ill., September 17, 2007)

15. United States v. Dillenbeck, 2007 U.S. Dist. LEXIS 66896 (D.S.C, September 7, 2007)

16. United States v. Stinson, 507 F. Supp. 2d 560 (S.D.W. Va. 2007)

17. United States v. Comstock, 507 F. Supp. 2d 522 (E.D.N.C. 2007)

18. United States v. Mitchell, 2007 U.S. Dist. LEXIS 66114 (W.D. Ark., September 6, 2007)

19. United States v. Kelton, 2007 U.S. Dist. LEXIS 65430 (M.D. Fla., September 5, 2007)

20. United States v. Lawrance, 2007 U.S. Dist. LEXIS 75518 (W.D. Okla., September 5, 2007)

21. United States v. Buxton, 2007 U.S. Dist. LEXIS 76142 (W.D. Okla., August 30, 2007)

22. United States v. Bennett, 2007 U.S. Dist. LEXIS 63152 (W.D. Ark., August 27, 2007)

23. United States v. Hulen, 2007 U.S. Dist. LEXIS 60113 (W.D. Ark., August 15, 2007)

24. United States v. Torres, 2007 U.S. Dist. LEXIS 60119 (W.D. Ark, August 15, 2007)

25. United States v. Sawn, 2007 U.S. Dist. LEXIS 59382 (W.D. Va., August 14, 2007)

26. United States v. Sallee, 2007 U.S. Dist. LEXIS 68350 (W.D. Okla., August 13, 2007)

27. United States v. Gonzales, 2007 U.S. Dist. LEXIS 58035 (N.D. Fla., August 9, 2007)

28. United States v. Marcantonio, 2007 U.S. Dist. LEXIS 55645 (W.D. Ark, July 31, 2007)

29. United States v. Heriot, 2007 U.S. Dist. LEXIS 54807 (D.S.C., July 27, 2007)

30. United States v. Roberts, 2007 U.S. Dist. LEXIS 54646 (W.D. Va., July 27, 2007)

31. United States v. Barnes, 2007 U.S. Dist. LEXIS 53245 (S.D.N.Y., July 23, 2007)

32. United States v. Husted, 2007 U.S. Dist. LEXIS 56662 (W.D. Okla., June 29, 2007)

33. United States v. Marvin Smith, 2007 U.S. Dist. LEXIS 43040 (S.D.W. Va., June 13, 2007)

34. United States v. Lang, 2007 U.S. Dist. LEXIS 56642 (W.D. Okla., June 5, 2007); Motion for new trial granted by, Motion denied by United States v. Lang, 2007 U.S. Dist. LEXIS 56655 (W.D. Okla., July 13, 2007)

35. United States v. Muzio, 2007 U.S. Dist. LEXIS 40294 (E.D. Mo., June 4, 2007); Accepted by, in part, Rejected by, in part, Motion denied by, Motion granted by, Dismissed by United States v. Muzio, 2007 U.S. Dist. LEXIS 54330 (E.D. Mo., July 26,

2007)

36. United States v. Mason, 510 F. Supp. 2d 923 (M.D. Fla., 2007)

37. United States v. Kapp, 487 F. Supp. 2d 536 (M.D. Pa., 2007)

38. United States v. Hinen, 487 F. Supp. 2d 747 (W.D. Va., 2007)

39. United States v. Markel, 2007 U.S. Dist. LEXIS 27102 (W.D. Ark., April 11, 2007)

40. United States v. Bobby Smith, 481 F. Supp. 2d 846 (E.D. Mich., 2007)

41. United States v. Payne, 2007 U.S. Dist. LEXIS 76942 (W.D. Ark, February 26, 2007)

42. United States v. Manning, 2007 U.S. Dist. LEXIS 12932 (W.D. Ark., February 23, 2007)

43. United States v. Templeton, 2007 U.S. Dist. LEXIS 8930 (W.D. Okla., February 7, 2007)

44. United States v. Madera, 474 F. Supp. 2d 1257 (M.D. Fla, 2007)