IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL DITOMASSO | C.R. No. 07-00132 ML |

**GOVERNMENT'S OBJECTION**
**TO MOTION TO DISMISS INDICTMENT**

The Government objects to Defendant's Motion to Dismiss Indictment for the reasons set forth in the accompanying memorandum of law and respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Milind M. Shah
MILIND M. SHAH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, R.I. 02903
Office (401) 709-5000
Facsimile (401) 709-5001
milind.shah@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 14th day of January 2008, I caused the within Government's Objection to Motion to Dismiss Indictment as well as the accompanying Government's Memorandum in Opposition to Motion to Dismiss and Memorandum and Exhibits 1 and 2 to be filed electronically. They are available for viewing and downloading from the ECF system.

Electronic notification:

Kevin J. Fitzgerald, Esquire
Assistant Federal Defendant
Federal Public Defender Office for Rhode Island
10 Weybosset Street, Suite 300
Providence, RI 02903
kevin_fitzgerald@fd.org

/s/ Milind M. Shah
MILIND M. SHAH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, R.I. 02903
Office (401) 709-5000
Facsimile (401) 709-5001
milind.shah@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL DITOMASSO | C.R. No. 07-00132 ML |

**GOVERNMENT'S MEMORANDUM**
**IN OPPOSITION TO MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. INTRODUCTION 1

II. BACKGROUND 2

A. Sex Offenses Committed by Defendant 2

B. Written Notifications of Duty to Register 2

C. Move to Rhode Island and Verbal Notification 3

D. Indictment 4

E. Federal and State Sex Offender Registration Law 4

III. ARGUMENT 7

A. SORNA, ON ITS FACE AND PER INTERIM REGULATION, REQUIRES ALL SEX OFFENDERS TO REGISTER WHERE THEY RESIDE AND WHERE THEY ARE EMPLOYMENT 7

1. SORNA took effect on July 26, 2006, the day it was signed into law. 12

2. Consistent with the prohibition on ex post facto laws, SORNA criminalizes the Defendant's conduct that occurred after SORNA's effective date. 13

3. SORNA required Defendant to register with Rhode Island's sex offender registry, which was up and running at all times relevant to this case. 13

B. DEFENDANT RECEIVED AMPLE, LEGALLY SUFFICIENT NOTIFICATION OF HIS DUTY TO REGISTER UNDER SORNA. 14

C. THE CONDUCT AT ISSUE ALL OCCURRED AFTER SORNA WAS SIGNED INTO LAW OR OTHERWISE BECAME APPLICABLE AND PUNISHING SUCH CONDUCT DOES NOT IMPLICATE THE EX POST FACTO CLAUSE. 16

D. SORNA DOES NOT VIOLATE THE COMMERCE CLAUSE. 20

E. SORNA DOES NOT VIOLATE DEFENDANT'S RIGHT TO TRAVEL. 25

F. CONGRESS'S DELEGATION OF AUTHORITY UNDER SORNA IS CONSISTENT WITH THE CONSTITION. 26

G. THE ATTORNEY GENERAL'S IMPLEMENTATION OF INTERIM REGULATIONS IS CONSISTENT WITH THE APA. 28

H. SORNA DOES NOT VIOLATE THE TENTH AMENDMENT 31

IV. CONCLUSION 32

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL DITOMASSO | C.R. No. 07-00132 ML |

**GOVERNMENT'S MEMORANDUM**
**IN OPPOSITION TO MOTION TO DISMISS**

## I. INTRODUCTION

The Government objects to Defendant's Motion to Dismiss Indictment and requests that the Court deny the Motion. The Sex Offender Registration and Notification Act ("SORNA") requires a sex offender to register in each state where the offender lives and each state where the offender is employed. *See* 42 U.S.C. § 16913(a). Registering in a state amounts to registering with that state's sex offender registry. Rhode Island's sex offender registry is set up to accept and requires registration from persons who reside in Rhode Island or who live elsewhere but are employed in Rhode Island. *See* R.I. Gen. Laws. §§ 11-37.1-3(a)-(b). Defendant, who is a sex offender, moved to Rhode Island from Massachusetts and failed to register with Rhode Island's registry, as required by SORNA. Moreover, even if Defendant did not move to Rhode Island, he nonetheless took up employment in Rhode Island and engaged in interstate travel in and out of Rhode Island to get to and from work. Because Defendant was required to register under 42 U.S.C. § 16913(a), traveled interstate, and knowingly failed to register, Defendant is criminally liable for failing to register under 18 U.S.C. § 2250.

Defendant asserts that he is not liable because he did not have a duty to register. This position is based on a gross misinterpretation of the statute. In order to accept this position, one must ignore the registration obligation set forth on the face of 42 U.S.C. § 16913(a): a sex offender must "register… in each jurisdiction where the offender resides [and] where the offender is an employee." A number of the purported constitutional deficiencies asserted by

Defendant are based on his fundamental misinterpretation of the statute. Defendant's remaining constitutional challenges are based on a misinterpretation of the applicable constitutional standards. There is no merit to Defendant's Motion.

## II. BACKGROUND

### A. Defendant's Sex Offenses

On January 23, 1995, Defendant Michael DiTomasso ("Defendant" or "DiTomasso") pleaded guilty before the Worcester Superior Court of Massachusetts to one count of Rape and Abuse of a Child under 16 (Mass. Gen. Laws ch. 265, § 23) and two counts of Indecent Assault and Battery of a Child under 14 (Mass. Gen. Laws ch. 265, § 13B). Ex. 1 (Criminal Complaint and Affidavit) at ¶ 11. The court sentenced DiTomasso to one to three years of incarceration for each of the three counts and had the sentences run concurrently. *Id.* On January 24, 1995, before the same court, DiTomasso pleaded guilty to two other counts of Indecent Assault and Battery of a Child under 14 Years (Mass. Gen. Laws ch. 265, § 13B). *Id.* at ¶ 14. The court sentenced DiTomasso to a 5 suspended sentence and two years of probation to commence after the one to three year sentence he received the day before. *Id.* [1]

### B. Written Notifications of Duty to Register

On or about October 7, 2004, August 2, 2005, and October 17, 2006, DiTomasso registered, as required by Massachusetts's sex offender registration law, with the Milford Police Department, listing a Milford address as his permanent address. With each of these registrations, DiTomasso signed a statement attesting that he had "read and understood" or that he had had

---

[1] Defendant does not contend that he is not a "sex offender" under SORNA, and it is indisputable that he is. Defendant was convicted of sex offenses and therefore qualifies as a "sex offender" under SORNA. *See* 42 U.S.C. § 16911. Defendant's sex crimes are analogous to coercion and enticement under 18 U.S.C. § 2422(b) or abusive sexual contact under 18 U.S.C. § 2244 and are punishable by imprisonment for more than one year. *See* Ex. 1 at ¶¶ 9-15. Therefore, Defendant is at least a tier II sex offender and the duration of his requirement therefore runs for at least 25 years. *See id.*; 42 U.S.C. §§ 16911(3), 16915(a). Even assuming that Defendant's registration period began on January 23, 1995, the day he was convicted of his first sex offense, Defendant was still obligated to register in 2006 and 2007. Defendant's obligation to register under SORNA continues until at least January 23, 2020.

read to him and understood the following:

> You are advised that you must notify, in writing, the Sex Offender Registry Board or the Police Department in the city or town in which you reside not less than 10 days prior to any change in residence, employment, or attendance at an institution of higher learning. You are further advised that you are required to immediately contact and advise of your presence, the appropriate authority in any other state in which you locate yourself for the purpose of residence, employment, or attendance at an institution of higher learning. Failing to do so may subject you to criminal prosecution.

*Id.* at ¶ 18.

**C. Move to Rhode Island and Verbal Notification**

Between October 17, 2006 and the first week of March 2007, DiTomasso moved from Milford, Massachusetts to Woonsocket, Rhode Island. *Id.* at ¶¶ 18-19. In or around mid-February 2007, DiTomasso and an acquaintance, Scott Stockton, traveled from Milford to Woonsocket and lived with another acquaintance in Woonsocket. [2] In or around the first week of March 2007, DiTomasso and Stockton moved into their own apartment in Woonsocket, Rhode Island. *Id.* at ¶ 19. From mid-March 2007 up until his arrest in April 2007, DiTomasso worked at PM Recyling's facility in Woonsocket.[3]

On March 27, 2007, Officer William Coupe of the Woonsocket Police Department found DiTomasso at or around his apartment and advised him that he was required to register as a sex offender and should report within a week to the Woonsocket police station for registration. *Id.* at ¶ 22. From the time DiTomasso moved to Rhode Island to April 4, 2007, he did not register with Rhode Island's sex offender registry. *Id.* at ¶¶ 3, 23. On April 4, 2007, Officer Coupe arrested DiTomasso. *Id.* at ¶ 23.

---

[2] Prior to the filing of the criminal complaint against DiTomasso, Scott Stockton, a civil witness, informed the Government that he and Mr. DiTomasso had moved from Massachusetts to Rhode Island in or around the first week of March 2007. Stockton recently informed the Government that he was mistaken. Stockton explained that he and DiTomasso moved from Milford, Massachusetts to Woonsocket, Rhode Island in around mid-February, lived with an acquaintance until they found their own place to live, and then moved to their own apartment in Woonsocket in or around the first week of March.

[3] This information does not appear in the affidavit accompanying the criminal complaint. The Government produced all documents in its possession relating to DiTomasso's employment, except materials relating to interviews of civilian witnesses.

**D. Indictment.**

On October 4, 2007, the Government filed a one count complaint charging Defendant Michael DiTomasso ("Defendant" or "DiTomasso") with knowingly failing to register as a sex offender in Rhode Island, as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250. *Id.* On October 10, 2007, the Grand Jury entered a one count Indictment against DiTomasso for knowingly failing to register as required under SORNA in violation of 18 U.S.C. § 2250. Ex. 2 (Indictment). The Indictment states:

> Beginning in March 2007 and continuing through April 4, 2007, in the District of Rhode Island, Michael DiTomasso, an individual required to register under the Sex Offender Registration and Notification Act and who travel in interstate commerce, did knowingly fail to register and update a registration as required by [SORNA] in violation of Title 18, United States Code, Section 2250.

Ex. 2.

**E. Federal and State Sex Offender Registration Law**

SORNA was preceded by the Jacob Wetterling Act in 1994, which is codified at 42 U.S.C. § 14071. That act provided federal funding to states that enacted sex offender registration laws, commonly known as "Megan's Laws." 42 U.S.C. § 14071. By 1996, the District of Columbia and each of the states, including Rhode Island, enacted a Megan's Law.[4] Rhode Island's Megan's law has been in place since 1996. *See* R.I. Gen. Laws §§ 11-37.1-1-20; R.I. Pub. Laws 1996, ch. 104, § 1. Under Rhode Island law, a sex offender is required to register "his or her current address with the local law enforcement agency having jurisdiction over the city or town in which the person having the duty to register resides…." R.I. Gen. Laws. §§ 11-37.1-3(a); 11-37.1-4(e). Sex offenders who live in other states but work in Rhode Island are also required to register in Rhode Island, and must do so at the local law enforcement agency for the

[4] *See* Dru Sjodin National Sex Offender Public Website maintained by the Department of Justice, http://www. nsopr.gov (providing references or links to sex offender registration website or text of sex offender registration laws in the fifty states and District of Columbia).

region in which they are employed. *See id.* at §§ 11-37.1-3(a) and (b), 11-37.1-1-4(a) and (d). The registry system enacted by Rhode Island's Megan's Law has been operational for all time periods relevant to this case, including the period of time from July 27, 2006 to the present.

On July 27, 2006, the President signed SORNA into law. Pub. L. No. 109-248, 120 Stat. 587 (2006). SORNA's purpose is the establishment of "a comprehensive national system for the registration of [sex offenders and offenders against children.]" *Id.* at 590 (section 102 of SORNA, which is codified at 42 U.S.C. § 16901). SORNA accomplishes this purpose by creating a new set of standards for the states' Megan's Laws and imposing registration obligations on sex offenders.[5] SORNA is divided into a series of regulatory provisions, which are primarily codified at 42 U.S.C. §§ 16901-16929, and an enforcement provision, which is codified at 42 U.S.C. § 2250.

In general, SORNA requires each jurisdiction to "maintain a jurisdiction-wide sex offender registry conforming to the requirements of [SORNA's regulatory provisions]." 42 U.S.C. § 16912(a). A sex offenders must "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." *Id.* at § 16913. Sex offenders are also required to provide information "to the appropriate official for inclusion in the sex offender registry[:]" name, social security number, address of residence, employer address, school address, license plate number, and "any other information required by the Attorney General." *Id.* at § 16914.[6] The duration of a sex offender's registration obligation and the frequency of in-person verifications of registry

---

[5] "Following the enactment of the Wetterling Act in 1994, that Act was amended a number of times, in part reflecting and in part promoting trends in the development of the State registration and notification programs. Ultimately, Congress concluded that the patchwork of standards that had resulted from piecemeal amendments should be replaced with a comprehensive new set of standards – the SORNA reforms [] – that would close potential gaps and loopholes under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs." Department of Justice's National Guidelines for Sex Offender Registration and Notification, 72 F.R. 30210, 30211 (May 30, 2007). Among the "[i]mportant areas of reform under the SORNA standard" is "[c]onsistently requiring that sex offenders in the covered classes register and keep the registration current in the jurisdictions in which they reside, work, or go to school." *Id.*

[6] Defendant is not being prosecuted for failing to provide SORNA specified information to Rhode Island's sex offender registry. He is being prosecuted for failing to register altogether.

information are based on the seriousness of the offender's sex offense or offenses. *See id.* at §§ 16915, 16916.

In addition to maintaining a registry, the jurisdictions are required to gather certain additional information about each registrant and include that information in the registry. *Id.* § 16914(b). Jurisdictions are required to notify sex offenders of their registration obligations. *Id.* at §§ 16914(b), 16917. Jurisdictions are required to post certain information about the registrants on the Internet and provide various types of information to the Attorney General of the United States and others. *Id.* at §§ 16918, 16921. The states and other territorial jurisdictions have until either July 27, 2009 or one year after the Attorney General makes certain registry management software available, whichever date comes later, to conform their state sex offender registries to SORNA's requirements. *Id.* at § 16924. Jurisdictions that fail to meet this deadline risk losing federal funding. *Id.* at § 16925.[7]

Sex offenders who fail to meet their registration obligations face SORNA's enforcement provision. Section 2250 of Title 18 of the United States Code states, in relevant part, that whoever

> (1) is required to register under [SORNA];
> (2) … travels in interstate…; and
> (3) knowingly fails to register or update a registration as required by [SORNA];
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

SORNA also requires certain action by the Attorney General. Section 16912(b) of Title 42 of the United States Code states "[t]he Attorney General shall issue guidelines and regulations to interpret and implement this title." The statute also identifies specific contexts in which clarification or supplementation of the statute may be necessary and authorizes the Attorney General to make such clarification or supplementation as necessary:[8]

---

[7] SORNA's regulatory provisions "that are cast as directions to jurisdictions or their officials constitute, in relation to the States, only conditions required to avoid the reduction of Federal funding under [42 U.S.C. § 16925]." 42 U.S.C. § 16925.

[8] "As in the Wetterling Act provisions [] that preceded SORNA, Congress recognized in SORNA that

> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section [*i.e.* 42 U.S.C. § 16913]
>
> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter [*i.e.*, Subchapter I of Chapter 151 of Title 42 of the United States Code] to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction [*i.e.* state], and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section [*i.e.*, 42 U.S.C. § 16913].

42 U.S.C. § 16913(d).

On February 28, 2008, the Attorney General promulgate an interim rule stating that "[t]he requirements of the Sex Offender Registration and Notification Act apply to *all sex offenders*, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." Department of Justice, Interim Rule with Request for Comments, 72 Fed. Reg. 8894, 8897 (February 28, 2007) (emphasis added). The Attorney General has also issued guidance in the form the National Guidelines for Sex Offender Registration and Notification. 72 Fed. Reg. 30210 (May 30, 2007).

## III. ARGUMENT[9]

### A. SORNA, ON ITS FACE AND PER INTERIM REGULATIONS PROMULGATED BY THE ATTORNEY GENERAL, REQUIRES ALL SEX OFFENDERS TO REGISTER WHERE THEY RESIDE AND WHERE THEY ARE EMPLOYMENT.

Interpretation of SORNA begins with the text of the statute. This includes the text Defendant does not mention in his memorandum, Section 42 U.S.C. § 16913(a). Section 16913, entitled "Registry Requirements for Sex Offenders," states at subpart (a) that "a sex offender shall register… in each jurisdiction where the offender resides [and] where the offender

---

supplementation of the statutory text by administrative guidance and rules would be helpful, and in some contexts necessary, to realize the legislation's objectives. [] In addition there are provisions in SORNA that identify specific contexts in which clarification or supplementation of the statutory provisions by the Attorney General is contemplated." Department of Justice, Interim Rule with Request for Comments, 72 Fed. Reg. 8894, 8895 (February 28, 2007).

[9] The Government notes that although there are a number of SORNA cases on appeal, no appellate court has yet issued a decision on the interpretation of SORNA or its constitutionality.

is an employee." The verb "to register" means to make an entry in a registry,[10] and by virtue of context, the type of registry being referred to is a sex offender registry. Furthermore, the phrase "in each jurisdiction" specifies that the relevant sex offender registries are the sex offender registries in place where the offender resides and is employed. Therefore, the duty to register under Section 16913(a) plainly means that a sex offender is required to register with the sex offender registries maintained in any jurisdiction in which the offender resides or is employed.

This interpretation of SORNA's registration requirement for sex offenders is well established. *See, e.g., United States v. Gould*, __ F. Supp.2d. __, 2007 WL 4371418, *2 (D. Md. Dec. 13, 2007) (Sex offender who moved to Maryland had a duty under SORNA to register with Maryland authorities.); *United States v. Howell*, No. CR07-2013, 2007 WL 3302547, *6 (N.D. Iowa Nov. 8, 2007) (A defendant has a duty to register under SORNA where he or she is "required to register or update his registration under the existing state law of his residence."); *United States v. Beasley*, No. 07-CR-115, 2007 WL 3489999, *3 n. 4 (N.D. Ga. Oct. 10, 2007) ("Registration under SORNA means registration under a state's sex offender registration rules."); *United States v. Marcantonio*, No. 07-60011, 2007 WL 2230773 (W.D. Ark. 2007) ("A defendant is required by SORNA to comply with the registration obligations as imposed by other laws."); *United States v. Manning*, No. 06-20055, 2007 WL 624037, *2 (W.D. Ark. Feb. 23, 2007) ("A defendant can violate the law by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law.").

Defendant seeks to modify the plain text of § 16913(a) by imposing a condition on the applicability of the registration obligation. He contends that the relevant state must implement SORNA's standards before the registration obligation applies to a sex offender. *See* Def.'s Mem. 4-6. Although nothing prevented Congress from drafting § 16913(a) in the manner Defendant suggests, Congress did not limit the registration obligation in the manner Defendant

---

[10] *See Merriam Webster's Collegiate Dictionary* 984-85 (10th ed. 1993) (Defines the verb "to register" as "to make or secure official entry of in a register[, or] to enroll one's name in a register[, a term which when used as a noun is synonymous with "registry."]); *see also Black's Law Dictionary* (8th ed. 2004) (Defines "to register" as "[t]o enter in a public registry[,]" as in register a new car.)

suggests. Section 16913(a) commands that a sex offender register "in each jurisdiction where the offender resides [and] where the offender is an employee." The section does not command that a sex offender register in each jurisdiction of residence and employment after those jurisdictions have implemented SORNA's standards. Furthermore, no other provision in SORNA expressly modifies or supplements § 16913(a)'s registration obligation so as to condition the obligation on a relevant state's implementation of SORNA's standards. *See generally* Pub. L. No. 109-248, 120 Stat. 587, 587-611 (2006) (Text of SORNA).[11] The plain text interpretation is also consistent with SORNA's purpose of establishing a comprehensive nationwide registration system for sex offenders. In order for any sex offender registry to be effective, sex offenders must, at a minimum, be required to register.[12] Defendant's interpretation is inconsistent with SORNA's purpose because it delays application of the registration requirements.

Four other courts have examined and rejected Defendant's implementation argument. *See United States v. Gould*, __ F.Supp.2d__, 2007 WL 4371418, *2 (D. Md. 2007) (The jurisdiction's "failure to implement SORNA does not preclude [defendant's] prosecution under [SORNA]."); *United States v. Adkins*, No. 07-cr-59, 2007 WL 4335457, *6 (N.D. Ind. Dec. 7, 2007) ("The fact that the states have not yet met their obligations under SORNA (they

---

[11] There are other sections of SORNA that provide other details concerning the registration. As already discussed, 42 U.S.C. § 16913 creates a duty to register. Section 16914 lists the type of information a sex offender must provide for inclusion in a sex offender registry. Section 16915 sets the period of time for which a sex offender must register. (Defendant is, at a minimum, a tier II sex offender, and as such, his registration obligation runs for no less than 25 years. *See* 42 U.S.C. § 16915). Section 16916 obligates sex offenders to periodically verify registry information. Although these provisions create additional duties and modify the basic registration duty by setting a time limit on the duty, none of these provisions condition a sex offender's duty to register on the relevant jurisdiction's implementation of SORNA's standards.

[12] There are at least two components to Congress's goal of establishing a comprehensive, nationwide registration system. The first is requiring sex offenders to register. By setting in place a uniform registration duty, Congress sought to "eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations." 72 F.R. 8894, 8895. The second component is to bring state sex offender registries in line with certain minimum standards so to "strengthen the nationwide network of sex offender registration and notification programs." 72 F.R. 30210, 30211. The first component can be pursued independently of the second.

have at least until July 27, 2009, to do so) is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the Act."); *United States v. Pitts*, No. 07-157, 2007 WL 3353423, *7 (M.D. La. Nov. 7, 2007) (compliance with 42 U.S.C. § 16913's registration requirement "does not require the offender to register in a jurisdiction that has enacted legislation complying with the requirements of [SORNA]."); *United States v. Beasley*, No. 07-CR-115, 2007 WL 3489999, *3 n. 4 (N.D. Ga. Oct. 10, 2007) ("Registration under SORNA means registration under a state's sex offender registration rules."). Research does not reveal a single instance where a court has accepted Defendant's implementation argument.

Defendant appears to rely on § 16913(d) to bolster his implantation argument. Section 16913(d) indicates that the Attorney General has the power to specify the applicability of SORNA's requirements to sex offenders convicted prior to the relevant state or states' implementation of SORNA:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter [*i.e.*, Subchapter I of Chapter 151 of Title 42 of the United States Code] to sex offenders convicted before July 27, 2006 or [before the implementation of this subchapter] in a particular jurisdiction….

42 U.S.C. § 19613(d). This provision, on its face, allows the Attorney General to supplement or modify what SORNA already requires. The provision does not state or mean that the Attorney General *determines*, in the very first instance, the applicability of SORNA to some class of sex offenders. Were the provision to state that the Attorney General "determines," then absent specification or determination by the Attorney General, the registration obligations would not apply to the specified class of sex offenders. The delegation of authority, based on the plain language of SORNA, is less sweeping. The provision states only that the Attorney General has the power to decide. Consequently, absent contrary action by the Attorney General, the reach of the registration requirement is controlled by the language of SORNA. The Attorney General may modify or supplement SORNA's registration obligation in certain respects, but such modification or supplementation alters or bolsters what SORNA, based on its text, previously

required. As already discussed above, the plain text of § 16913(a) requires that *any person* who is a sex offender must register in his or her states of residence and employment. Hence, prior to any action by the Attorney General or absent any action by the Attorney General, SORNA requires all sex offenders to register.

Perhaps it is theoretically possible that the Attorney General could exempt a certain class of sex offenders from being required to register under SORNA. However, no such theoretical possibility has come to pass. In fact, the Attorney General has exercised his authority in a manner that only confirms the plain language of SORNA. On February 28, 2007, the Attorney General promulgated interim regulations that state "[t]he requirements of the Sex Offender Registration and Notification Act apply to *all sex offenders*, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3 (emphasis added).[13] Consequently, even if § 16913(d) were read to give the Attorney General the power to determine the applicability of SORNA's requirements to the specified class of sex offenders, on February 28, 2007, the Attorney General made it clear that no sex offender is exempt from SORNA's requirements.[14] Consequently, even if – contrary to the plain language of the statute – the registration requirement did not apply to Defendant until the interim rule, from February 28, 2007 onward, Defendant was obligated to register.

[13] The Department of Justice, in the request for comments accompanying the February 28, 2007 interim rule, confirms that the plain text of SORNA requires all sex offenders to register: "[c]onsidered facially, SORNA requires all sex offenders who were convicted of sex offenses in its registration categories to register in relevant jurisdictions[.]" 72 Fed. Reg. 8894, 8896. Although the text is plain, "sex offenders with predicate convictions predating SORNA who do not wish to be subject to the SORNA registration requirements, or who wish to avoid being held to account for having violated those requirements, have not been barred from attempting to devise arguments that SORNA is inapplicable to them…. This rule forecloses such claims by making it indisputably clear that SORNA applies to all sex offenders [] regardless of when they were convicted." *Id.*

[14] Defendant asserts that the National Guidelines for Sex Offender Registration and Notification "make plain that sex offenders with 'pre-SORNA implementation convictions,' [] have a duty to register only after the jurisdiction implements the federal law." Def.'s Mem. at 5. Just the opposite is true: "[t]he applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements apply to all sex offenders[.]" National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30210 (May 30, 2007) (at Section II.C.).

### 1. SORNA took effect on July 26, 2006, the day it was signed into law.

Defendant argues that the duties imposed on sex offenders under SORNA do not take effect until either the Attorney General specifies that they take effect or until the relevant state implements the standards set forth under SORNA. *See* Def.'s Mem. at 4-6. Defendant is in error. SORNA took effect the day it was signed into law, July 26, 2006.

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991); *accord Johnson v. United States*, 529 U.S. 694, 702 (2000); 2 Sutherland Statutory Construction § 33:6 (6th ed. 2007) ("The courts should not imply that the legislature intended a special effective date unless such implication is so clear to allow no other reasonable interpretation.").

Nothing in the text or purpose of SORNA suggests that Congress sought to establish an effective date for the statute different than the date of enactment. Defendant concedes that there is no provision that expressly states a particular day on which SORNA is to take effect. *See* Def.'s Mem. 5. The purpose of SORNA is to establish "a comprehensive national system for the registration of [sex offenders]." 42 U.S.C. § 16901. In order for this goal to be accomplished, sex offenders must be made to register and cannot be allowed to avoid registration by moving from one state to another. *See, e.g., United States v. Hinen*, 487 F.Supp.2d 747, 752-53 (W.D. Va. 2007) (Congress enacted SORNA in order to "ensure offenders could not evade requirements by simply moving from one state to another."); 72 F.R. 8894, 8895 (Congress enacted SORNA in order to "eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations.). It is inconsistent with Congress's purpose of ensuring sex offender registration to delay the effective date of SORNA to some date after SORNA's enactment. Congress has not provided any clear direction that SORNA's effective date is some date other than the date of enactment.

**2. Consistent with the prohibition on ex post facto laws, SORNA criminalizes the Defendant's conduct that occurred after SORNA's effective date.**

Defendant argues that he cannot be punished under SORNA because SORNA's duty to register was not effective at the time he is alleged to have violated the duty. However, punishing conduct that is criminal at the time of commission does not violate the *Ex Post Facto* Clause. *See Weaver v. Graham*, 450 U.S. 24, 28 (1981). SORNA took effect on July 27, 2006 and the Attorney General's interim rule took was issued on February 28, 2007. As discussed above, the duty to register became applicable to Defendant on July 27, 2006, and in the alternative, it did not take effect until February 28, 2007. Either way, for the time period during which Defendant is charged with violating his duty – March 2007 through April 4 – the duty was applicable to Defendant.

**3. SORNA required Defendant to register with Rhode Island's sex offender registry, which was up and running at all times relevant to this case.**

Defendant argues that punishing him under SORNA would violate the Due Process Clause because, at the relevant time period, it was not possible to comply with SORNA in Rhode Island. *See* Def.'s Mem. at 7. As discussed above, SORNA obligates a sex offender to register with the sex offender registries in his or her states of residence and employment. As discussed above, nothing in SORNA requires a state to implement SORNA's standards prior to requiring sex offenders to register under SORNA in that state. Rhode Island has had a sex offender registry since 1996. *See* R.I. Gen. Laws §§ 11-37.1-1-20; R.I. Pub. Laws 1996, ch. 104, § 1. Moreover, Rhode Island's sex offender registry has been in place and operational since before SORNA was signed into law.[15] There is, therefore, no substance to or basis for Defendant's claim that he could not (and cannot) register under SORNA.

---

[15] Had Defendant tried to register but could not due to circumstances outside his control, he could assert an affirmative defense. *See* 18 U.S.C. § 2250.

**B. DEFENDANT RECEIVED AMPLE, LEGALLY SUFFICIENT NOTIFICATION OF HIS DUTY TO REGISTER UNDER SORNA.**

It is difficult to imagine how Defendant could have more fully been notified of his registration obligation. The declarations he signed on October 7, 2004 , August 2, 2005, and October 17, 2006 show that he knew he was required to register in Rhode Island. More over, he received verbal notice. This notice suffices to establish knowledge under SORNA, and Defendant has not shown any grounds for deeming this notice constitutionally insufficient.

Section 2250 of Title 18 of the United States code requires knowing failure to register, not specific notice that the registration obligations are imposed by SORNA. The relevant element, the scienter element, states the following: "knowingly fails to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250. The phrase "as required by SORNA" specifies that the type of registration at issue is the type of registration set forth under SORNA. As discussed in Section A above, SORNA requires a sex offender to register with the sex offender registry of the state in which he or she resides and in the states in which he or she is employed. Hence, the scienter element requires only that a sex offender be aware that he or she is required to register with the sex offender registry of his or her state of residence and employment. *See*, *e.g.*, *Howell v. United States v. Bennett*, No. 07CR20040, 2007 WL 2461696, **1-2 (W.D. Ark. Aug. 27, 2007); *United States v. Gonzales*, No. 5:07cr27, 2007 WL 2298004, *3-4 (N.D. Fla. 2007); *United States v. Hinen*, 497 F.Supp.2d 747, 754 (W.D. Va. May 12, 2007). Here, the scienter element requires only that Defendant be aware that he is required to register in Rhode Island. Based on the written and verbal notices he received Defendant was amply aware of his registration obligation.[16]

Defendant cites to no case law that suggests that the type of knowledge required

[16] Defendant suggests that SORNA requires sex offenders be provided specific notice. Defendant misstates what is apparent in the plain text of the statute. Under SORNA, the notice required consists of "inform[ing] the sex offender of the duties of a sex offender under [SORNA] and explain[ing] those duties[.]" 42 U.S.C. § 16917. Furthermore, nothing in the National Guidelines for Sex Offender Registration and Notification specify or suggest that specific notice is required. *See*, *generally*, 72 F.R. at 30210-30234.

by § 2250 is constitutionally deficient. District courts faced Defendant's argument have rejected it. The Constitution does not require that SORNA defendants receive specific notice or bear specific knowledge of SORNA's registration requirements. *See, e.g., United States v. Cardenas*, No. 07-80108, 2007 WL 4245913, *13 (S.D. Fla. Nov. 29, 2007) ("Defendant's due process challenges amounts to a claim that ignorance of the law excuses non-compliance."); *United States v. Pitts*, No. 07-157, 2007 WL 3353423, *7 (M.D. La. Nov. 7, 2007) (rejecting due process argument where defendant received state notifications of duty to register); *United States v. Beasley*, No. 07-CR-115, 2007 WL 3499999, *9 (N.D. Ga. Oct. 10, 2007) (rejecting due process argument where defendant received state notifications of duty to register).

The one case cited by Defendant in support of his position, *Lambert v. California*, 355 U.S. 225 (1957), holds only that some level of scienter is necessary, not that specific notice of the law itself is required. *See* 355 U.S. at 227-28. The Los Angeles municipal code at issue in that case made it unlawful for any person convicted of a felony, specifically any offense that would be punishable as a felony if committed in California, to remaining in Los Angeles for more than five days without registering. *See id.* at 226. "No element of willfulness [or scienter] is by terms included in the ordinance nor read into it by the California court as a condition necessary for a conviction." *Id.* at 227. The Court held that for such a registration law to comport with the requirements of due process, "actual knowledge of the duty to register of the duty to register or proof of the probability of such knowledge and subsequent failure to comply" was necessary. *See id.* at 229. Section 2250's scienter requirement incorporates the very standard set forth in *Lambert*. One who fails to register without any knowledge of his or her duty to do so has not violated 42 U.S.C. § 2250. One needs to know of one's registration obligation in order to be found liable under § 2250. With Defendant, there is ample evidence of actual knowledge of the duty to register or evidence that makes such knowledge probable prior to the failure to register.

**C. THE CONDUCT AT ISSUE ALL OCCURRED AFTER SORNA WAS SIGNED INTO LAW OR OTHERWISE BECAME APPLICABLE AND PUNISHING SUCH CONDUCT DOES NOT IMPLICATE THE EX POST FACTO CLAUSE.**

Defendant's *ex post facto* analysis is flawed. The key inquiry in an *ex post facto* analysis is not when a crime commenced, but rather when a crime concluded. "A law is retrospective if it 'changes the legal consequences of acts *completed before* [the laws] effective date.'" *See Miller v. Florida*, 482 U.S. 427, 430, 107 S. Ct. 2446, 2451 (1987) (emphasis added); *accord Weaver v. Graham*, 450 U.S. at 28. The Second Circuit provides helpful guidance:

> The critical question in evaluating an ex post facto claim "is whether the law changes the legal consequences of acts *completed before* its effective date." A statute does not violate ex post facto principles where it applies to a crime that 'began prior to, but continued after' the statute's effective date.

*United States v. Brady*, 26 F.3d 282, 291 (2d Cir. 1994) (emphasis added)). Indeed, courts have consistently held in other contexts that an offense that begins before but is not completed until after a statute's effective date does not violate the Ex Post Facto Clause. *See, e.g.*, *United States v. Pfeifer*, 371 F.3d 430, 436 (8th Cir. 2004); *United States v. Wilson*, 210 F.3d 230, 234-235 (4th Cir. 2000); *Russell v. Gregoire*, 124 F.3d 1079, 1088-1089 (9th Cir. 1997); *United States v. Alkins*, 925 F.2d 541, 549 (2d Cir. 1991).[17]

The crime of failing to register cannot possibly have occurred – based on the very elements of the crime – prior to the time when Defendant was required to register. If Defendant was required to register as of July 26, 2006, all of his conduct – travel and knowingly failing to register – falls during a time when he was required under SORNA to register. Section 2250 of Title 18 is not being applied to any conduct that occurred prior to its effective date, and therefore, there can be no *ex post facto* problem.

---

[17] The *Ex Post Facto* Clause is not implicated when a jurisdictional interstate commerce requirement is satisfied before a statute's effective date. *See, e.g.*, *United States v. Layne*, 43 F.3d 127, 131-32 (5th Cir. 1995); *United States v. Gillies*, 851 F.2d 492, 495-96 (1st Cir. 1988); *United States v. D'Angelo*, 819 F.2d 1062, 1065-1066 (11th Cir. 1987).

Even assuming – despite the arguments to the contrary that are set forth in argument section A above – that the effective date for SORNA's duty to register did not come into play until February 28, 2007, Defendant cannot have completed his criminal act until after February 28, 2007. The elements of failing to register under 18 U.S.C. § 2250 are (1) being a person who is required to register under SORNA, (2) interstate travel, and (3) knowingly failing to register in the jurisdiction of residence as well as the jurisdiction of employment (or in other words knowingly failing to register under SORNA). Defendant cannot have violated § 2250 before February 28, 2007 because he was not required to register prior to February 28, 2007, and not all of the elements of § 2250 are met. However, come post-February 28, 2007, he was required to register and knowingly did not. Consequently, he completed the crime during a period of time when SORNA's registration requirement was in effect. The fact that the travel occurred prior to February 28, 2007 is immaterial, because it is the completion, not commencement, of the crime that provides the date relevant for any *ex post facto* analysis.[18]

Furthermore, in *Smith v. Doe*, the Supreme Court considered the issue of whether Alaska's sex offender registration and notification law constituted retroactive punishment forbidden by the *ex post facto* Clause. The Court upheld the constitutionality of the statute and in doing so, outlined a framework for courts to apply in addressing an *ex post facto* challenge. Several federal district courts have since applied this framework in addressing claims that SORNA is unconstitutional because it punishes conduct occurring before the statue's enactment, and the majority of those courts have held that SORNA is not an *ex post facto* law. *See, e.g., United States v. Howell,* 2007 WL 3302547 at *14 (collecting cases); *United States v. Pitts,*

[18] Although it is unnecessary to select a particular date during the March 2007 through April 4, 2007 period where Defendant violated SORNA, it is worth noting that Defendant was in violation of SORNA's duty to register virtually every day of this period. From the start of March 2007, Defendant had 3 days to register in Rhode Island. *See* 42 U.S.C. 16913(c). From March 4 through April 4, 2007, Defendant was in violation of his duty to register. He could have been charged under 18 U.S.C. § 2250 during any portion of that time period. When the Government noted that the failure to register is a continuing offense, the Government meant only that the failure to register does not come to a close 3 days after the obligation to register takes hold. Rather the obligation continues for the entire time period one does not register as SORNA requires, and during that period of default, as long as the elements of 18 U.S.C. §2250 exist, there is a basis for criminal liability.

*supra,* slip op. at 5; *United States v. Carr,* 2007 WL 3256600 (N.D. Indiana November 2, 2007), slip op. at 2 (collecting cases); *United States v. Ambert*, *supra,* slip op. at *2*; *United States v. Lovejoy,*— F. Supp. —, 2007 WL 282681 (D.N.D. September 28, 2007); *United States v. Kent, supra,* slip op *at 1; May*, *supra,* slip op. at 5; *Hinen*, *supra,* 487 F.Supp.2d at 755-57; *Mason*, *supra*, slip op. at 4-5; *United States v. Markel*, *supra*, slip op. at 1-2; *United States v. Manning*, *supra,* slip op. at 1-2; *Templeton*, *supra,* slip op. at 5; *United States v. Madera*, 474 F.Supp.2d 1257,1262-64 (M.D. Fla. 2007). Several other courts have reached a different result. *See, e.g., United States v. Kapp*, 487 F. Supp.2d 536, 542-43 (M.D. Pa. 2007); *United States v. Muzio*, 2007 WL 2159462 (E.D. Mo. July 26, 2007) (both courts finding an *ex post facto* violation for those who traveled after July 26, 2006 but before the effective date of the Attorney General interim regulations on February 28, 2007). *See also United States v. Deese,* 2007 WL 2778362 (W.D. Okla September 21, 2007) (finding an *ex post facto* violation where the interstate travel occurred prior to July 26, 2006, the effective date of 2250, a situation not present here)(Attachment 2).

The court should adopt the reasoning of the majority of courts who have found that no *ex post facto* violation occurs based on the timing of the travel, which clearly post-dated the enactment of 18 U.S.C. § 2250. The *Lovejoy* court noted specifically that every court that has considered an *ex post facto* challenge in similar circumstances– *i.e.,* when the defendant failed to register after the Attorney General's guidelines were effective- has rejected the challenge. *Lovejoy*, *supra*, slip op. at 6. In *Hinen*, for example, the court conducted the two-pronged inquiry the Supreme Court set out in *Smith* to determine whether the statutory scheme of SORNA and 2250, as applied to Hinen's 2001 conviction, were punitive and violated the *Ex Post Facto* Clause. *Hinen*, 487 F.Supp.2d. at 755-56. The court first examined the statutes to determine whether Congress drafted the statutory scheme to establish civil proceedings or whether it intended the statutes to impose punishment on those already convicted of a crime. *Id.* at 755. The court examined the face of the statute and noted that Congress explicitly stated that its purpose in establishing SORNA was "to protect the public from sex offenders and offenders

against children, and in response to the vicious attacks by violent predators." *Id.*, citing Title 42, United States Code, Section 16901. The court found no indication from the face of the statute that Congress enacted the statute merely to punish sex offenders, and cited legislative history to confirm the statute was enacted due to Congress's concern that sex offenders who evade registration requirements by crossing state lines were a threat to public safety. *See Hinen*, 487 F. Supp. at 756 & n.7. The legislative history reflects Congress's intent to enact a statute to "ensure that sex offenders comply with the range of pre-existing civil requirements that existed in every state at the time of SORNA's passage." *Id.* at 756.

Having determined it was Congress's intent to create SORNA as a non-punitive regulatory scheme, the *Hinen* court then set out to determine, as required by the Supreme Court in *Smith*, whether the actual effect of the act upon offenders effectively negates Congress's intent that it be non-punitive. *Id.* at 756. In *Smith*, the Court stated that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil penalty into a criminal penalty." *Smith*, 538 U.S. at 92 (internal quotations omitted). In *Smith*, where Alaska's statutory scheme for the registration of sex offenders was almost identical to the registration requirements of the federal statute at issue here, the Supreme Court concluded that Alaska's registration requirements were not so punitive as to negate the legislative intent that they be non-punitive. The court in *Hinen* found that since SORNA's registration requirements are so nearly identical to those involved in the Alaska scheme at issue in *Smith*, the court was bound to follow the Supreme Court's conclusion in *Smith* that the effects of sex offender registration requirements do not negate legislative intent that such registration requirements be non-punitive.

In this case, Defendant has provided no proof sufficient to override Congress's stated legislative intent that SORNA is a regulatory statute whose purpose is to protect the public, nor to distinguish the federal statutory scheme from that found non-punitive by the Court in *Smith.* Defendant's claim that SORNA and Title 18, United States Code, Section 2250 raise the penalty for his previous conviction, is incorrect. Section 2250 does not serve to punish him

for an act that was not a crime when committed, does not increase the penalty for a crime committed before the law's enactment, and does not deprive Defendant of a defense available before its enactment. Any punishment Defendant may be subjected to under § 2250 is for his failure to register as a sex offender after traveling interstate, all of which occurred after SORNA and § 2250 became applicable to him on July 27, 2006.

### D. SORNA DOES NOT VIOLATE THE COMMERCE CLAUSE.

Defendant also argues that section 2250 violates the Commerce Clause in that it does not require that a defendant travel in interstate commerce in furtherance of the failure to register offense. However, section 2250 is a valid exercise of Congress's power under the Commerce Clause because it is substantially related to the protection of the public from sex offenders who travel interstate and may re-offend.

The Supreme Court has in *United States v. Lopez*, 514 U.S. 549, 558-59 (1995), identified three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce; second, Congress may regulate the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities, and third, Congress may regulate those activities having a substantial relation to interstate commerce, that is, those activities that substantially affect interstate commerce. *See id.* at 558-59. Furthermore, since its decision in *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), the Supreme Court, with few exceptions, has interpreted the Commerce Clause expansively, upholding many exertions of legislative authority. Further, statutes are presumed constitutional. *See United States v. Morrison*, 529 U.S. 598, 607 (2000). A congressional enactment will only be invalidated on a plain showing that Congress exceeded its authority under the Constitution. *Id.*

Criminalization of intrastate possession of child pornography has been found to be rationally related to the regulation of interstate commerce in child pornography, and therefore a valid exercise of Commerce Clause authority. *See United States v. Maxwell*, 446 F.3d 1210,

1216-19 (11th Cir. 2006). A law penalizing a sex offender who travels between states and fails to register as required clearly affects interstate commerce under the analysis of *Maxwell* and *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195 (2005) (application of law criminalizing manufacture, distribution, or possession of marijuana to intrastate growers and users of marijuana for medical purposes did not exceed Congress's authority under the Commerce Clause).

SORNA includes a jurisdictional nexus. The offender either: (a) is required to register based on a federal conviction, (b) has traveled in interstate commerce, or (c) has entered, left, or resided in Indian country. 18 U.S.C. § 2250. *See Templeton*, 2007 WL 445481 at *4. There is no requirement that the government prove that Defendant had the specific intent to fail to register when he traveled, as Defendant suggests. *See Mason*, 510 F.Supp.2d 923, 932 (M.D. Fla. 2007); *Markel*, 2007 WL 2230773 at *3 ("A defendant can violate the law by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law."); *see generally United States v. Angle*, 234 F.3d 326, 335 (7th Cir. 2000) (The Commerce Clause permits Congress to regulate persons or things in interstate commerce). It is sufficient that the exercise of Commerce Clause authority be rationally related to the tracking and identification of sex offenders who travel from state to state.

> Congress's purpose in passing the Act was to protect the public from sex offenders. See 42 U.S.C. § 16913. The ability to track sex offenders as they move from state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause."

*Madera*, 474 F.Supp.2d at 1265.

The cases cited by Defendant in his motion are inapposite. Defendant misconstrues and misapplies the holdings of *Lopez* and *Morrison*. In *Lopez*, the Supreme Court held that Congress exceeded its interstate commerce powers when it enacted the Gun-Free School Zone Act, 18 U.S.C. § 922(q)(1)(A), because the Act did not regulate a commercial activity, nor did it contain a requirement that the possession of a firearm in a school zone be connected in any way to interstate commerce. *See Lopez*, 514 U.S. at 551. This Act made it a

federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id.* Reviewing the jurisprudence on the constitutionality of congressional enactments under the Commerce Clause, as set forth above, the *Lopez* Court determined that Congress may properly enact legislation under its commerce powers in three broad categories: (1) to regulate use of the channels of interstate commerce; (2) "to protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) to regulate activities having a substantial effect on interstate commerce. *Id.* at 558-59. In holding the Gun-Free School Zone Act an invalid exercise of Congress's commerce power, the Court concluded that where an enactment neither purports to regulate a use of a channel of interstate commerce, or persons or things in interstate commerce, the proper test of constitutionality under the Commerce Clause is whether the regulated activity otherwise substantially affects interstate commerce. *See id.* at 562.

Insofar as Defendant relies on *Lopez* to support his argument, his reliance is misplaced. The statute in question in *Lopez* presented a much different situation than that presented by 18 U.S.C. § 2250. In *Lopez*, the Gun-Free School Zone Act criminalized mere possession of a firearm in a school zone. The statute contained no language or jurisdictional element linking its reach to the use or movement of things or people in the channels of interstate commerce. *See id.* at 561. In the instant case, however, 18 U.S.C. § 2250 provides just such a jurisdictional nexus:

> (a) In general.--Whoever-
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)…(B) travels in interstate or foreign commerce…; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a)(2).

Defendant's reliance on *United States v. Morrison*, 529 U.S. 598 (2000), is also misplaced. Using the three-pronged framework articulated in *Lopez*, the *Morrison* Court concluded that because the statute did not regulate the use of the channels of interstate commerce or protect or regulate instrumentalities of interstate commerce, the statute could only be upheld if it substantially affected interstate commerce, *i.e.*, *Lopez's* third permissible regulation category. *See id.* at 611-13. The *Morrison* Court also noted that like the statute in *Lopez*, § 13981 did not contain a jurisdictional element establishing that the federal cause of action was "in pursuance of Congress' power to regulate interstate commerce." *Morrison* 529 U.S. at 613.

Section 2250 does not violate the Commerce Clause for at least two reasons. First, this case involves interstate travel. Such travel is inherently national and affects commerce. "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce . . . ." *Lopez*, 514 U.S. at 558. The federal commerce power encompasses the movement of persons in interstate commerce as well as commodities. *United States v. Guest*, 383 U.S. 745, 758-59 (1966). Second, 18 U.S.C. § 2250 regulates activities that substantially affect interstate commerce. *In United States v. Plotts*, 347 F.3d 873 (10th Cir. 2003), the Tenth Circuit Court of Appeals found that the DNA Act, 18 U.S.C. § 3583(d), which requires persons convicted of enumerated criminal sexual offenses to provide DNA samples, "is necessary and proper to the exercise of the Commerce Clause," regardless of whether the Act is construed as a civil sanction for committing a qualifying federal offense or as a law enforcement tool. *See Plotts*, 347 F.3d at 879. In *Plotts*, the defendant had pled guilty to receiving child pornography over the internet in violation of federal law and argued on appeal that the DNA Act exceeded Congress's power under the Commerce Clause. *Id.* at 875.

The Ninth Circuit Court of Appeals also found the DNA Act a valid exercise of federal Commerce Clause power in *United States v. Reynard*, No. 02-50476, 2007 WL 79545 (9th Cir. Jan. 12, 2007). The court pointed out that collection of DNA samples falls under the second Lopez category as a "thing in commerce." *Id.* at *12. Noting that DNA samples convey

information about a federal offender's identity, the court observed that the Supreme Court has long ago concluded that non-commercial activities that involve nothing more than the flow of information can constitute commerce. *Id.* (citing *Reno v. Condon*, 528 U.S. 141, 143 (2000) (quoting *Lopez*, 514 U.S. at 558-59)). "Congress has the authority, under the Commerce Clause, to regulate the interstate release of personal information, even when this release does not involve a sale of the information and is non-economic in nature." *Id.* at *12.

The *Reynard* court also found that Congress's exercise of authority under the Commerce Clause does not offend the principles of federalism. *See id.* "Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress' Commerce Clause power, because this power includes the authority 'to govern affairs which the individual states, with their limited territorial jurisdictions, are not fully capable of governing.'" *Id.* at *13 (citation omitted). Similarly, the failure to register as a sex offender statute involves persons in interstate travel, which falls within the second *Lopez* category. Moreover, § 2250(a) helps states address a problem that defies local solution: the need for a national database of sex offenders in order to protect the public from sex offenders who move in interstate commerce, thereby facilitating the availability of sex offender registration information to all states, regardless of where the offender may relocate.

Nor is there anything to Defendant's suggestion that there is an insufficient nexus required under 18 U.S.C. § 2250 between interstate travel and the substantive offense conduct. Understanding the statute in conformity with its natural meaning and underlying purposes, it creates criminal liability for a person who has been convicted of an offense in the SORNA registration categories who travels interstate and knowingly fails to register as required. It does not purport to extend federal jurisdiction to every sex offender in the SORNA categories who has traveled interstate at some point in his life. Moreover, even if § 2250 were interpreted, however implausibly, so broadly as to reach cases in which Defendant traveled interstate only prior to conviction for the SORNA registration offense, it would still be valid as applied in the present

case, because Defendant did travel in interstate commerce following his Colorado conviction for an offense for which 42 U.S.C. § 16913(a) requires him to register and keep the registration current "in each jurisdiction where the offender resides."

This Court should deny Defendant's challenge to 18 U.S.C. § 2250 based on the Commerce Clause. Congress has authority to regulate persons in interstate commerce and activities having a substantial relation to interstate commerce. Moreover, this statute is rationally related to congressional authority to protect and inform the public by tracking and identifying sex offenders who travel from state to state. In summary, Defendant's claim of a violation of the Commerce Clause lacks merit and can afford Defendant no relief.

**E. SORNA DOES NOT VIOLATE DEFENDANT'S RIGHT TO TRAVEL.**

The right of a citizen to travel interstate is a fundamental right protected by the Constitution. *See United States v. Guest*, 383 U.S. 745, 757-58 (1966). This fundamental right to travel "protects a person's: 1) right to enter and leave another state; 2) right to be treated fairly when temporarily present in another state; and 3) right to be treated the same as other citizens of that state when moving there permanently." *United States v. Pitts,* -- F. Supp. 2d --- at *9 2007 WL 3353423 (M.D. La Nov. 7, 2007) (citing *Saenz v. Roe*, 526 U.S. 489, 499 (1990)). However, a mere burden on a person's ability to travel interstate is not necessarily a violation of the constitutional right to travel. *Id.*

Defendant argues that the government in enacting the travel element of SORNA, under 18 U.S.C. § 2250, did not poses a significant compelling interest. Congress, however, has a compelling interest in protecting the public from sex offenders who may relocate in their neighborhoods. In *United States v. Pitts*, the district court held that "the federal government has a compelling interest providing these registration requirements to enable law enforcement to prevent future sexual offenses." *Pitts*, 2007 WL 3353423 at *9; *see also Cardenas*, 2007 WL 4245913 at 14 ("The interest a state has in protecting the children of the state and in preventing future sexual offenses is significant enough to outweigh the inconvenience or burden of a person

being required to sign an offender registration form after relocating to a new state."). Also, the Eleventh Circuit when dealing with Florida's Sex Offender Registration stated that the state had a strong interest in preventing future sexual offenses and notifying law enforcement about possible sex offenders. *See Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2006).

Also, SORNA's registration requirement does not burden an offender enough as to restrict their right to travel. Other district courts that have decided that the registration burden placed on various defendants did not unconstitutionally burden their right to travel. *See Cardenas*, 2007 WL 4245913 at 14; *United States v. Pitt*, 2007 WL 3353423 at *9; *United States v. Ambert*, No. 07-CR-053, 2007 WL 2949476, *4 (N.D. Fla Oct. 10, 2007); *United States v. Gonzales*, 2007 WL 2298004 at *8. Therefore, the minor burden placed on Defendant through the registration requirement is clearly outweighed by the compelling interest that the government posses in requiring the registration.

### F. CONGRESS'S DELEGATION OF AUTHORITY UNDER SORNA IS CONSISTENT WITH THE CONSTITUTION.

Under the Constitution, one branch of government may not cede functions exclusively granted to it by the Constitution to another branch. *See Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892) ("That congress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the constitution."). Congress, however, may delegate authority if it lays down an "intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928). The Supreme Court has also given Congress wide latitude with regards to its delegation power stating, "[o]nly if we could say that there is an absence of standards for the guidance of the Administrator's action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would we be justified in overriding its choice of means for effecting its declared purpose of preventing inflation." *Yakus v. United States*, 321 U.S. 414, 426 (1944). Thus the issue raised in this case is

whether Congress in enacting SORNA properly laid down an intelligible principle that the Attorney General is directed to conform.

The Supreme Court has only twice found that the non-delegation doctrine has been violated. *See Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). In both *Panama Refining* and *A.L.A. Schechter Poultry*, the Court addressed issues of legislative power delegated to the executive branch. *Panama* 293 U.S. at 406, 432; *A.L.A. Schechter Poultry*, 295 U.S. at 520-21. In determining that both of these delegations of power were unconstitutional the Court focused on the absence of standards and restrictions in connection with the broad grant of authority. *A.L.A. Schechter Poultry*, 295 U.S. at 542.

No District Court has held SORNA unconstitutional on non-delegation grounds. *See Cardenas*, 2007 WL 4245913 (S.D. Fla. Nov. 29, 2007); *United States v. Hinen*, 487 F.Supp.2d 747; *United States v. Elliot*, 2007 WL 4365599; *United States v. Lovejoy*,__F.Supp.2d __, 2007 WL 2812681 (D.N.D. 2007); *United States v. Mason*, 510 F. Supp. 2d 923 (M.D. Fla 2007); *United States v. Gould*, __ F. Supp. 2d __, 2007 WL 4371418 (D. Md.)(Dec. 13, 2007); *United States v. Cardenas*, 2007 WL 4245913 (S.D. Fla. Nov. 29, 2007); *United States v. Swan*, 2007 WL 2344980 (W.D. Va Aug. 15, 2007).

These District Courts held that SORNA limited the authority of the Attorney General to narrowly prescribed circumstances. *Cardenas*, 2007 WL 4245913; *Hinen*, 487 F.Supp.2d 747; *Elliot*, 2007 WL 4365599; *Lovejoy*, __F.Supp.2d __, 2007 WL 2812681; *Mason*, 510 F. Supp. 2d 923;. These limited areas are either to determine the retroactivity of SORNA as to offenders convicted before SORNA's enactment, *see Gould*, 2007 WL 4371418 (D. Md.), or to "the initial registration of sex offenders unable to comply with subsection (b) of this section." *Cardenas*, at 10, 2007 WL 4245913 (quoting 42 U.S.C. 16913(d)). In addition to giving limited authority to the Attorney General, two district courts have declined "to disagree with over seventy years of case law upholding congressional delegations of legislative authority based on such limited support, especially when the law in question serves such a detailed and clearly

delineated legislative purpose." *Ambert*, 2007 WL 2949476 (*quoting Mason*, 510 F. Supp. 2d 923 ).

**G. THE ATTORNEY GENERAL'S IMPLEMENTATION OF INTERIM REGULATIONS IS CONSISTEN WITH THE APA.**

Following the direction of Congress under 42 U.S.C. §16913(d), on February 28, 2007 the Attorney General issued implementing regulations under 28 C.F.R. §72.1, *et seq*. This regulation applied SORNA retroactively to all persons convicted of a sex offense prior to July 27, 2006. *See* 28 C.F.R. §72.3. These regulations were made effective immediately which appears to be a violation of the Administrative Procedure Act (APA), 5 U.S.C. §553, which requires a time for public notice and comment.

The APA normally requires agencies to publish a proposed rule in the Federal Register and give interested parties the opportunity to comment on the rule before it becomes affective. 5 U.S.C. §553(d). However, the APA permits agencies to enact rules without notice for "good cause" where allowing the comment period is "impractical, unnecessary, or contrary to the public interest." 5 U.S.C. §533(b). One Circuit Court has held that the "good cause" exception is not an "escape clause its use should be limited to emergency situations." *Utility Sold Waste Activities Group v. Environmental Protection Agency*, 236 F. 3d 749, 754 (D.C. Cir. 2001) (citations and quotations omitted).

However, when reviewing an action by an agency for "good cause" the standard of review placed on the reviewing court is one of "arbitrary, capricious or abuse of discretion". 5 U.S.C. §706(2)(A)(1994). In *Nat'l Customs Brokers and Forwarders Ass'n of America, Inc. v. United States*, the United States Customs Service ("Customs") issued regulations allowing a consignee to enter merchandise valued at $200 or less in the United States without using a licensed customs broker. *See Nat'l Customs Brokers and Forwarders Ass'n of America, Inc. v. United States*, 59 F.3d 1219, 1223 (Fed. Cir. 1995). These regulations were implemented without prior notice and comment, but substantive comments on the interim regulation were allowed after implementation. Customs explained and the court found to be satisfactory that the

"delay is unnecessary because it does not expect the public to object to the regulations being promulgated as they merely provide the relief that Congress intended." *Id.*

With respect to the interim rules promulgated by the Attorney General the Department of Justice included in the regulations a finding of good cause by stating that:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements - and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required - to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA §102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

72 Fed. Reg. 8894, 8896-8897 (2007). This statement by the Department of Justice follows the mandate of the APA by publishing the good cause reason with the regulation. *See* 5 U.S.C. §553(d)(3). Similarly to the Customs agency, the Department of Justice announced that delaying implementation was contrary to public interest. *See* 72 Fed. Reg. 39, 8897. The public safety concern that is noted in the delay is the commission of additional sexual assaults and child sexual abuse or exploitation offenses by previously convicted sex offenders. *See* 72 Fed. Reg. 39, 8896. The "good cause" reasons given by the Department of Justice in implementing these rules has been upheld by various District Courts. *See United States v. Gould*, 2007 WL 4371418; *United States v. Pitts*, 2007 WL 3353423 (M.D. La Nov. 7, 2007). While the only other district court to have dealt with this issue held that the interim rule was not material to Defendant's position. *See Cardenas*, 2007 WL 4245913 (he was being prosecuted under the legislation enacted by

Congress rather than the rules promulgated by the Attorney General).

In the instant case Defendant's objection to the actions taken by the Attorney General are not meritorious. Defendant argues that the 30 day notice and comment period is not "impracticable" because it would not delay registration or impede the function of law enforcement agencies because states are not obligated to comply with SORNA until July 2009. As noted previously SORNA does not require states, such as Rhode Island, to take any additional steps in order for Defendant to fall under SORNA. Each state has already implemented their own sex offender registration requirements under their own state Meghan's Law. *e.g.* R.I. Gen. Laws §11-37.1-1. This registration system is the system that SORNA requires Defendant to register under, not a newly created system by state implementation. Therefore, a delay in implementation of this regulation would "impede the functioning of law enforcement agencies."

Also, Defendant argues that a notice and comment period is not "contrary to the public interest." For the reasons stated above and when reviewing the statements made by the Department of Justice under an arbitrary, capricious or abuse of discretion standard it is clear that expediting the implementation of the rules meets the public interest requirement because it is aimed at clarification and prevention of future sexual assaults. In addition Defendant argues in his brief that the Attorney General's rules do not apply to him because he relocated before the rules were promulgated. This need for clarification and possible coverage of sexual offenders convicted prior to July 26, 2006 demonstrates a strong presumption that the delay is "impracticable" and "contrary to the public interest" because it would allow other offender to relocate and avoid their obligations under current law.

Finally, Defendant argues that the notice and comment period was necessary because the Attorney General's manual explains that "unnecessary" refers to "the issuance of a minor rule in which the public is not particularly interested." *See Utility Solid Waste Activities Group v. Environmental Protection Agency*, 236 F. 3d 749, 755 (D.C. Cir 2001); *see also South Carolina v. Block*, 558 F. Supp. 1004, 1016 (D.S.C. 1983). These decisions are offset by Clay Broadcasting Corp v. United States and other in which various courts have held good cause

existed even if the regulation were going to affect various individuals. *See Hawaii Helicopter Operators Ass'n v. F.A.A.*, 51 F.3d 212 (9th Cir. 1995); *Clay Broadcasting Corp. v United States* (5th Cir. 1972) 464 F2d 1313, rev'd on other grounds 415 US 336; *see also Gould*, 2007 WL 4371418 (D.Md); *Pitts*, 2007 WL 3353423 (M.D. La Nov. 7, 2007).

**H. SORNA DOES NOT VIOLATE THE TENTH AMENDMENT.**

It is well established that the Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering federal law. *See Printz v. United States*, 521 U.S. 898, 935 (1997). Here Defendant argues that SORNA requires states to register sex offenders before they have an opportunity to enact SORNA provisions voluntarily and is therefore commandeering state officials into enacting federal law in violation of the Tenth Amendment. Defendant further argues that SORNA is similar to the Brady Handgun Act which was held to be a violation of the Tenth Amendment. *See id*. at 898. This claim is clearly without merit.

In *Printz*, the Supreme Court state that Congress could not enact a law that required local law enforcement officials to conduct background checks of prospective handgun purchasers. *See id.* at 928. The precedent in *Printz* is distinguishable from the instant case before the court. In *Printz* Congress was placing a new duty upon state officials. *See id*. SORNA on the other hand does not place a new duty on state officials to register sex offenders. As noted previously, states, such as Rhode Island, have already implemented a registration scheme under their own Meghan's Law; therefore, SORNA is not forcing state officials to start a new registration system. *See* R.I. Gen. Laws §11-37.1-1. Thus *Printz* is not instructive.

Congress is asking states to change the elements of the offender registration procedures to comply with the federal program. *Gould*, 2007 WL 4371418 (D. Md.). However, as Defendant concedes Congress is permitted through the spending clause to grant incentives to states that choose to enact the federal scheme. Def.'s Supp. Mot. Dismiss at 23; *see also New York v. United States*, 506 U.S. 144 (1992) (Monetary incentives are proper). The Supreme Court

has specifically held "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). Thus SORNA's requirement on state officials is proper.

Defendant in the instant case can only cite to general legal principles to try and overturn SORNA because when these issues have come before the various district courts they have all held that SORNA is constitutional and not a violation of the Tenth Amendment. *United States v. Gould*, -- F. Supp.2d --- 2007 WL 4371418 (D. Md.); *United States v. Cardenas*, Slip Copy, 2007 WL 4245913 (S.D. Fla Nov. 29, 2007); *United States v. Pitts*, -- F.Supp.2d --- 2007 WL 3353423 (M.D. La Nov. 7, 2007). Specifically in *United States v. Gould,* the court noted that "[s]tate officials are not commandeered to implement the SORNA requirements. Rather, states are offered monetary incentives to amend their existing offender registration requirements." *Gould*, 2007 WL 4371418 (D. Md.).

## IV. CONCLUSION

For the above reasons, the Government respectfully requests that Defendant's Motion to Dismiss the Indictment be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,
ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ Milind M. Shah
MILIND M. SHAH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, R.I. 02903
Office (401) 709-5000
Facsimile (401) 709-5001
milind.shah@usdoj.gov

## CERTIFICATE OF SERVICE

On this 14th day of January 2008, I caused the within Government's Objection to Motion to Dismiss Indictment as well as the accompanying Government's Memorandum in Opposition to Motion to Dismiss and Memorandum and Exhibits 1 and 2 to be filed electronically. They are available for viewing and downloading from the ECF system.

Electronic notification:

Kevin J. Fitzgerald, Esquire
Assistant Federal Defendant
Federal Public Defender Office for Rhode Island
10 Weybosset Street, Suite 300
Providence, RI 02903
kevin_fitzgerald@fd.org

/s/ Milind M. Shah
MILIND M. SHAH
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, R.I. 02903
Office (401) 709-5000
Facsimile (401) 709-5001
milind.shah@usdoj.gov