UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v. CR No. 07-132ML

MICHAEL DITOMASSO

**MEMORANDUM AND ORDER**

Defendant Michael DiTomasso ("Defendant") moves to dismiss the indictment for failure to register as a sex offender pursuant to 18 U.S.C. § 2250. Defendant sets forth a battery of constitutional arguments against the indictment: violation of the Due Process Clause, the Ex Post Facto Clause, the Commerce Clause, the right to travel, the Tenth Amendment, and the separation of powers doctrine. Additionally, Defendant argues that the Attorney General's interim rule issued on February 27, 2007 violates the Administrative Procedure Act, and that the government has not established a prima facie case because Defendant was not properly notified under section 2250. For the reasons set forth below, Defendant's motion is DENIED.

I. Legal Background

This dispute centers on the constitutionality of the Sex Offender Registration and Notification Act ("SORNA") and its applicability in Rhode Island, a state which has not yet implemented all its provisions. A brief discussion of the history and scope of the Act

is necessary to preface this opinion.

SORNA is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states. See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch) ("Laws regarding registration for sex offenders have not been consistent from State to State [sic] now all States will lock arms and present a unified front in the battle to protect children.").[1] The prior major federal legislation on sex offender registration is the Jacob Wetterling Act, passed by Congress in 1994. 42 U.S.C. § 14071. The Jacob Wetterling Act ("Megan's Laws") required that all states register sex offenders or lose some federal funding. 42 U.S.C. § 14071(g)(2). By 1996, all states had enacted Megan's Laws in some form. Smith v. Doe, 538 U.S. 84, 90 (2003). Under Rhode Island law, a sex offender is required to register "his or her current address with the local law enforcement agency having jurisdiction over the city or town in which the person having the duty to register resides . . . ." R.I. Gen. Laws § 11-37.1-3(a).

SORNA, which is part of the Adam Walsh Child Protection and Safety Act of 2006, was enacted on July 27, 2006. Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (codified primarily in 42 U.S.C. §§ 16901-16962). SORNA can be roughly divided into two components, the state component and the component applying to individuals. With regard to the former, SORNA requires states to implement sex offender registries which comply with SORNA requirements in 2009 or lose part of their federal funding. 42 U.S.C. §§ 16924(a), 16925(a). The new registries must include standard information and be compatible with a national electronic

---

[1] Although there are no committee reports regarding SORNA, the Congressional Record helps to illuminate the congressional intent behind this statute. United States v. Hinen, 487 F.Supp.2d 747, 752 n.5 (W.D. Va. 2007).

database. 42 U.S.C. §§ 16912, 16918, 16919. Rhode Island has not yet fully complied with these requirements.

The individual component of SORNA establishes a federal crime for failing to register:

> (a) In general. --Whoever--
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250. The law also stipulates how to keep registration current, when to register, and other related details. 42 U.S.C. §§ 16913-16916. SORNA's criminal statute differs from state registration criminal laws primarily in its jurisdictional element. To fall within the registration requirement of SORNA, a sex offender must either be convicted for a sex offense under a federal law or have traveled in interstate commerce. See 18 U.S.C. § 2250.

SORNA reserved some matters to be further regulated by the Attorney General, including the initial registration of sex offenders. See, e.g., 42 U.S.C. §§ 16912, 16913(d), 16917. The Attorney General addressed this matter in an interim rule promulgated on February 28, 2007: "The requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." Applicability of the Sex Offender

Registration and Notification Act, 72 Fed. Reg. 8,894, 8,897 (Feb. 28, 2007) (to be codified at 28 C.F.R. § 72.3).[2]

## II. Factual Background

The government has alleged the following facts.[3] In 1995, Defendant pleaded guilty to one count of rape and abuse of a child under 16 and two counts of indecent assault and battery of a child under 14 under Massachusetts law. (Affidavit ¶¶ 11, 14.) In 2003, Defendant was residing in Massachusetts. At that time, the Massachusetts Sex Offender Registry Board wrote Defendant at his address in Milford, Massachusetts informing him that he must register as a sex offender. (Id. ¶ 17.) Defendant then registered in 2004, 2005, and 2006 with the Milford Police Department. (Id.) Each time Defendant registered, he signed that he had read and understood the following statement:

> You are further advised that you are required to immediately contact and advise of your presence, the appropriate authority in any other state in which you locate yourself for the purpose of residence, employment, or attendance at an institution of higher learning. Failing to do so may subject you to criminal prosecution. (Id. ¶ 18.)

In about the first week of March 2007, Defendant moved from Massachusetts to Woonsocket, Rhode Island. (Id. ¶¶ 19, 20.) A Woonsocket police officer, William Coupe, advised Defendant in person on March 27, 2007 that he must register as a sex offender at the Woonsocket police station within a week. (Id. ¶ 22.) Eight days later, on

---

[2] The Attorney General issued additional details on the initial registration of sex offenders in The National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30,210 (May 30, 2007).

[3] The indictment contains only a brief statement of facts. In support of its complaint, however, the government supplied an affidavit by Charles Wyant, the Supervisory Deputy United States Marshal and Sex Offender Investigations Coordinator for the District of Rhode Island, detailing his own investigation and the work of other law enforcement officers involved in the investigation. On October 19, 2007, Defendant made a motion that the government supply a Bill of Particulars. The government responded by providing the affidavit and other documents. After briefing and oral argument on the subject, this Court denied Defendants' motion for a Bill of Particulars, finding that the affidavit and other forms of discovery would be adequate. In this motion, Defendant has referred to the facts alleged in the affidavit, in addition to the indictment, in making his argument. Therefore, this Court will consider the facts alleged in the affidavit as well as those in the indictment in deciding this motion.

April 4, 2007, Officer Coupe arrested Defendant for failing to register. (Id. ¶ 23.) At that point, Defendant had still not registered in Rhode Island, nor had he updated his previous registration to reflect his new address. (Id.)

## III. Analysis

A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only toward the sufficiency of the indictment to charge an offense. See United States v. Sampson, 371 U.S. 75, 78-79 (1962). "[T]he issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982). Thus, the allegations of the indictment must be taken as true for the purposes of deciding a motion to dismiss. Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952). When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial. See United States v. Knox, 396 U.S. 77, 83 n.7 (1969).

### A. Due Process Clause

Defendant argues that charging him with violating SORNA violates the guarantee of fundamental fairness under the Due Process Clause because it was impossible for him to comply with SORNA. See United States v. Dalton, 960 F.2d 121, 124 (10th Cir. 1992) ("Because the crimes of which [the defendant] was convicted thus have as an essential element his failure to do an act that he is incapable of performing, his fundamental fairness argument is persuasive."). Rhode Island had not yet implemented SORNA, Defendant contends, therefore, he could not register under SORNA in Rhode Island.

At first blush, the language of the criminal statute appears to support Defendant's contention. Subsection (3) of 18 U.S.C. § 2250(a) provides that one of the elements of the crime of not registering is that the defendant "knowingly fails to register or update a registration as required by [SORNA]." The language "as required by [SORNA]" would seem to indicate that a sex offender is required to register under SORNA, not the applicable state law. By that logic, unless a state had fully implemented SORNA, including the additional registration requirements demanded by SORNA, a sex offender registering in that state would be registering under the state's sex offender law, not under the federal law.

The language "as required by [SORNA]," however, begs the question of what SORNA "require[s]" of a sex offender. See 18 U.S.C. § 2250. The section of SORNA entitled "[r]egistry requirements for sex offenders" answers that question by stating: "In general[.] A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). This language makes clear that sex offenders have a *general* obligation to register in their jurisdiction. There is no mention anywhere in SORNA that the registration obligation does not become effective until the state implements the additional registration requirements of SORNA. The language "as required by [SORNA]" requires a sex offender to register – whether under state or federal law is immaterial. See 18 U.S.C. § 2250. Here, Defendant was able to comply because, Rhode Island, like every other state, has adopted Megan's Laws and requires registration. See R.I. Gen. Laws §§ 11-37.1-1 to -20; Smith v. Doe, 538 U.S. at 90.

Defendant's response to this argument is that SORNA nowhere specifically

requires sex offenders to register under state law. To the extent there is any ambiguity in the language of the statute, however, both the structure and purpose of the law show that Congress intended for sex offenders to register in their states regardless of whether a state has fully implemented SORNA. See McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 423 (1st Cir. 2007) ("'In determining congressional intent, we employ the traditional tools of statutory construction, including a consideration of the language, structure, purpose, and history of the statute.'"). The purpose of SORNA is to prevent sex offenders from falling through the cracks between each state's registration system as they move between states. See 42 U.S.C. § 16901; 152 Cong. Rec. at 8013. SORNA is structured to achieve this goal by requiring sex offenders to register in a *state*, not some free-floating federal bureaucracy. See 42 U.S.C. § 16913. States then, if they choose to comply with all the requirements, eventually link up their registries to create a comprehensive national registry. See 42 U.S.C. §§ 16918, 16925. But, the basis of this system is the states – and it is the states' Megan's Laws on which SORNA builds. Whether or not the states all eventually comply with the requirements of the national registry, the goal of SORNA is to ensure that sex offenders register so that the public and law enforcement are aware of their locations. 152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner). Thus, any interpretation of section 2250 which allows a sex offender to avoid registration in a state defies the structure and purpose of the law.

Defendant additionally argues that the federal regulations show that SORNA's criminal provision was not intended to apply until after a state had fully implemented SORNA. Defendant points to 72 Fed. Reg. 30,210 to support this proposition: "With

respect to sex offenders with … pre-SORNA-implementation convictions who remain in the … registered sex offenders populations *at the time of implementation* … jurisdictions should endeavor to register them with SORNA as quickly as possible." 72 Fed. Reg. 30,210, 30,228 (emphasis added). According to this language, Defendant contends, as a member of the "sex offenders population[]," there is no requirement that he be registered under SORNA until "the time of implementation." See id. The "time of implementation," Defendant avers, is when a state fully implements SORNA. See id.

This text does not support Defendant's argument as clearly as he would like, however. It states that "*registered* sex offenders" should be registered under SORNA's requirements, which suggests that even prior to full implementation of SORNA, the obligation to register with the state applies. See id. Instead of indicating that *no* obligation to register applies until SORNA is implemented, the regulation conveys that sex offenders should be registered at all times. See id. The regulation's reference to registration "under SORNA" makes sense as a requirement that, when SORNA is fully implemented in a state, sex offenders should be re-registered in order to comply with SORNA's additional registration requirements as quickly as possible. See id. In any case, to the extent regulations conflict with the language of the statute, the statute overrides the regulations. United States v. New England Coal & Coke Co., 318 F.2d 138, 143 (1st Cir. 1963) ("[T]he power to issue regulations is not the power to change the law . . . .").

Thus, Defendant's argument that he could not comply with SORNA's registration requirement by registering under the Rhode Island sex offender registration system fails. SORNA not only requires him to register in Rhode Island, but Defendant was also fully

able to comply with this requirement. There is, therefore, no violation of his due process rights in the indictment for his failure to register. Defendant's motion to dismiss on this ground fails.

B. Ex Post Facto Clause

Defendant next contends that the indictment violates the Ex Post Facto Clause because SORNA did not apply to him until after the allegedly criminal acts took place. The Ex Post Facto Clause of the Constitution "'forbids the application of any law or rule that increases punishment for pre-existing conduct.'" United States v. Munoz-Franco, 487 F.3d 25, 55 (1st Cir. 2007).

Defendant's Ex Post Facto Clause argument is closely related to his Due Process Clause argument because in both he contends that SORNA did not apply to him. In his ex post facto argument, however, he argues that even if SORNA applied to him before being fully implemented in Rhode Island, it did not apply until February 28, 2007 when the Attorney General issued his interim rule. At the time of SORNA's enactment in 2006, Defendant contends, SORNA carved out prior sex offenders from liability and delegated the task of determining how SORNA applied to prior sex offenders to the Attorney General. To establish that SORNA did not apply to him when enacted, Defendant relies on 42 U.S.C. § 16913:

> (d) Initial registration of sex offenders unable to comply with subsection (b)[4] of this section
> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the

[4] Subsection b covers the initial registration of sex offenders and states:

> The sex offender shall initially register--
>> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment. 42 U.S.C. § 16913.

> registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Thus, Defendant contends that SORNA's registration requirements did not apply to someone such as himself, who committed a sex offense before July 27, 2006, until the Attorney General specified the "applicability" of SORNA for prior sex offenders. See 42 U.S.C. § 16913(d). Thus, according to Defendant, the Attorney General was delegated the authority to determine whether SORNA's registration requirements applied to prior sex offenders at all. On February 28, 2007, the Attorney General promulgated an interim rule stating that the "requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 72 Fed. Reg. at 8,897. Only on or after February 28, 2007, assuming that SORNA applied to him before being fully implemented in Rhode Island, will Defendant concede that a prior offender such as himself could be liable for the federal crime.

February 28, 2007 is a critical date for Defendant because Defendant contends the government only alleges that Defendant arrived in Rhode Island in March. Thus, according to Defendant, the allegations leave open the possibility that Defendant moved to Rhode Island in February, before the Attorney General's interim rule was promulgated. If SORNA's obligation to register only applied to Defendant after February 28, 2007, then Defendant might be correct that the government violated the Ex Post Facto Clause by indicting him for actions that occurred before February 28, 2007.[5]

---

[5] The government argues that even if SORNA only applied to Defendant after February 28th, failure to register is a continuing offense. Defendant failed to register for more than a month after February 28th. In fact, the government alleges he never registered before being arrested on April 4th. Thus, the government contends that even if Defendant traveled interstate before February 28th, he had ample opportunity to register after the Attorney General promulgated the Interim Rule. The Defendant counters that the offense is complete if a sex offender fails to register within three days of interstate travel. See 42 U.S.C. § 16913.

An examination of SORNA makes clear, however, that SORNA applied to Defendant when enacted – that is, on July 27, 2006. As discussed in this Court's analysis under constitutional due process, SORNA imposed a general obligation on sex offenders to register on the date of SORNA's enactment. Contrary to Defendant's argument, SORNA did not carve out prior sex offenders from this obligation and delegate the determination of whether the registration requirement applied to them to the Attorney General. Rather, the language in SORNA on which Defendant's argument depends only delegates to the Attorney General decisions about a prior sex offender's *initial* registration. The title of the subsection to which Defendant refers, section 16913(d), makes clear that the subsection is about initial registration: "Initial registration of sex offenders unable to comply with subsection (b)." 42 U.S.C. § 16913(d). Defendant makes much of the fact that the language of subsection (d) without the title is ambiguous. This may be true, but the language must be viewed in the context of the title. See I.N.S. v. National Center for Immigrants' Rights, Inc., 502 U.S. 183, 189 (1991) (noting that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

Moreover, as subsection (d)'s title and language state, its purpose is to modify subsection (b), which covers initial registration. 42 U.S.C. § 16913(d). Subsection (d)

---

The question of whether the obligation to register under SORNA is a continuing offense, however, is by no means a settled question. As of this writing, the issue has not been addressed by an appellate court. A majority of district courts hold that it is not a continuous offense. See, e.g., United States v. Aldrich, No. 07-158, 2008 WL 427483, at *4 (D. Neb. Feb. 14, 2008); United States v. Terwilliger, No. 07-1254, 2008 WL 50075, at *3 (S.D. Cal. Jan. 3, 2008); United States v. Mantia, No. 07-60041, 2007 WL 4730120, at *5 (W.D. La. Dec. 10, 2007); United States v. Wilson, No. 06-867, 2007 WL 3046290, at *2 (D. Utah Oct. 16, 2007); United States v. Stinson, 507 F.Supp.2d 560, 569-70 (S.D. W.Va. 2007); United States v. Sallee, No. 07-152, 2007 WL 3283739, at *3 (W.D. Okla. Aug. 13, 2007); United States v. Smith, 481 F.Supp.2d 846, 852 (E.D. Mich. 2007). Some courts, however, hold that it is a continuous offense. See, e.g., United States v. Akers, No. 07-086, 2008 WL 914493, at *6 (N.D. Ind. Apr. 3, 2008); United States v. Carr, No. 07-073, 2007 WL 3256600, at *3 ((N.D. Ind. Nov. 2, 2007). Due to the fact that this Court holds that SORNA applied to Defendant when enacted, however, this Court will not address the continuous offense question.

also makes sense within the statutory scheme only as an elaboration on subsection (b). See United States v. Robertson, 459 F.3d 39, 51 (1st Cir. 2006) ("We accord the statutory text 'its ordinary meaning by reference to the specific context in which that language is used, and the broader context of the statute as a whole.'") Subsection (b) asks the impossible of prior sex offenders who have already been sentenced and served their term of imprisonment because it requires that sex offenders initially register before completing their imprisonment or within three days of being sentenced. See 42 U.S.C. § 16913(b). Obviously, Defendant, like many other sex offenders, missed the deadline for initial registration since SORNA was enacted in 2006, years after he was sentenced and served his term of imprisonment. Subsection (d) therefore directs the Attorney General to determine what requirements apply to initial registration for those sex offenders who cannot comply with subsection (b). 42 U.S.C. § 16913(d).

Subsection (d)'s delegation to the Attorney General, however, does not effect the general requirement of all sex offenders to register.[6] See 42 U.S.C. § 16913(d). It certainly has no bearing on Defendant's failure to register in Rhode Island since Defendant had already registered as a sex offender several times before. Defendant had an obligation, therefore, to register as of SORNA's enactment in 2006. Accordingly, all

---

[6] Courts split on whether subsection (d) only delegates to the Attorney General authority to regulate initial registration or registration in general for prior sex offenders. Some courts have held that subsection (d) only refers to initial registration. See, e.g., United States v. Beasley, No. 07-115, 2007 WL 3489999, at *5 (N.D. Ga. Oct 10, 2007); United States v. May, Nos. 07-00164 and 07-00059, 2007 WL 2790388, at *4 (S.D. Iowa Sept. 24, 2007); United States v. Sawn, No. 07-0020, 2007 WL 2344980, at *2 (W.D. Va. Aug. 15, 2007); United States v. Gonzales, No. 07-27, 2007 WL 2298004, at *4 (N.D. Fla. Aug. 9, 2007); United States v. Roberts, No. 07-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007); United States v. Mason, 510 F.Supp.2d 923, 928 (M.D. Fla. 2007); Hinen, 487 F.Supp.2d at 750-51.
Others hold that SORNA does not apply to prior sex offenders before the Attorney General issued his interim rule on February 28, 2007. See, e.g., United States v. Cole, No. 07-30062, 2007 WL 2714111, at *3 (S.D. Ill. Sept. 17, 2007); Stinson, 507 F.Supp.2d at 568-69; United States v. Heriot, No. 07-323, 2007 WL 2199516, at *2 (D.S.C. July 27, 2007); United States v. Muzio, No. 07-179, 2007 WL 2159462, at *5 (E.D. Mo. July 26, 2007); United States v. Marvin L. Smith, 528 F.Supp.2d 615, 618 (S.D. W.Va. 2007); United States v. Kapp, 487 F.Supp.2d 536, 542 (M.D. Pa. 2007).

of Defendant's actions alleged in the indictment occurred after that date and his ex post facto argument fails.

Furthermore, since this Court finds that SORNA's delegation to the Attorney General has no bearing on Defendant's case, Defendant's arguments that Congress improperly delegated a legislative function to the Attorney General and that the Attorney General's interim rule violated the Administrative Procedures Act are both moot.

C. Lack of Notification

Defendant argues he did not knowingly violate SORNA due to the fact that he was never notified of his obligations under SORNA. Since section 2250 requires a knowing violation as an element of the offense, Defendant essentially argues here that the government has failed to allege a prima facie violation of section 2250. See 18 U.S.C. § 2250(a)(3). Defendant additionally contends that the failure to notify Defendant constitutes a Due Process Clause violation because the Constitution requires that people be notified of laws that affect their liberty.

In order to commit a prima facie violation of SORNA's registration requirement, Defendant had to "*knowingly* fail[] to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250 (emphasis added). As discussed, 18 U.S.C. § 2250 establishes a general requirement that a sex offender register in the state in which he lives. Here, the government alleges that Defendant was notified of his obligation to register in Rhode Island on multiple occasions. All three times Defendant registered in Massachusetts, he signed a statement signifying his understanding that he must "immediately contact and advise of your presence, the appropriate authority in any other state in which you locate yourself for the purpose of residence . . . ." (Affidavit ¶ 18.)

The statement also warned him that "[f]ailing to do so may subject you to criminal prosecution." (Id.) When he arrived in Rhode Island, the government alleges that Officer Coupe advised Defendant in person that he was required to register as a sex offender at the Woonsocket police station. (Id. ¶ 22.)

Nevertheless, Defendant contends, although these warnings may have sufficed to notify him of his obligations under state law, he never received a notification of his obligations under SORNA. He therefore may have known he was violating Rhode Island law by not registering, but he did not know he was also violating federal law. By contending that he is not culpable unless he knew he was violating federal law, Defendant essentially argues that he must have had a specific intent to violate SORNA in order to be liable. The question, then, is whether SORNA is a specific intent law.

In United States v. Pitrone, the First Circuit addressed whether similar language in a statute included a specific intent requirement. 115 F.3d 1, 5 (1st Cir. 1997). The relevant language of the Migratory Bird Treaty Act ("MBTA") required that the defendant "knowingly take by any manner whatsoever any migratory bird with intent to sell . . . ." See Pitrone, 115 F.3d at 2, 5; 16 U.S.C. § 707(b). The Pitrone defendant, who was on trial for a violation of the MBTA, argued that his jury instructions should have stated that he knowingly violated federal law instead of merely stating that he knowingly "s[old] a bird." 115 F.3d at 4. Finding that the term "knowingly" was "neither precisely defined in the statute itself nor immediately obvious in the statutory context," the First Circuit analyzed the legislative history to determine whether Congress intended to include specific intent. Id. at 5.

Here, like the MBTA, SORNA does not define "knowingly." Although not

"immediately obvious," the statutory context at least suggests that specific intent is not required. See id. As addressed in this Court's discussion of due process, registration "as required by [SORNA]" is a general requirement to register in the jurisdiction in which the defendant is a resident. It is not a registration requirement which is specific to SORNA. Moreover, the fact that Congress did not include language requiring specific intent is itself indicative of Congress' intent. The First Circuit in Pitrone approvingly cites the Ninth Circuit's opinion in United States v. Flores, for the proposition that a statute's use of the term "knowingly" to modify a specific action while omitting terms "'such as 'intent' or 'willfully,' which traditionally accompany specific intent crimes,'" indicates that Congress did not require specific intent. Pitrone, 115 F.3d at 6; United States v. Flores, 753 F.2d 1499, 1505 (9th Cir. 1985); see also United States v. Meeker, 527 F.2d 12, 14 (9th Cir. 1975) (reasoning that if Congress had intended to legislate a specific intent crime, the statute would have said 'with the intent to'); United States v. Bristol, 473 F.2d 439, 442-43 (5th Cir. 1973) (noting that it is difficult to "bootstrap" a specific intent requirement to a statute that has no common law basis). In section 2250, "knowingly" modifies a specific action, the failure to register. There is no language requiring intent or a willful failure to register. In short, the statute does not require a defendant to "knowingly fail[] to register or update a registration *with the intent to violate* SORNA." See United States v. Gonzalez, No. 07-27, 2007 WL 2298004, at *5 (N.D. Fla. Aug. 9, 2007). The omission of this specific intent language certainly suggests that section 2250 is a general intent statute.

The legislative history further supports a general, rather than a specific, intent requirement. SORNA establishes a "comprehensive national system" for the registration

of sex offenders. 42 U.S.C. § 16901. As such, it was intended to close loopholes, especially to prevent sex offenders from being lost to tracking efforts as they travel from state to state. See 152 Cong. Rec. at 8013. Thus, Congress' objective was to ensure that sex offenders registered and kept their registration up to date. 152 Cong. Rec. at 5722 ("[W]e intend to make one thing clear to sex offenders across the county – you better [sic] register, and you better [sic] keep the information, current, or you are going to jail."). Given this concern with registration and the lack of any indication of specific intent from the statute, Congress could not have intended to require a specific intent to violate federal law rather than a general intent not to register.

Defendant, citing to Lambert v. California, 355 U.S. 225 (1954), also argues that the failure to notify Defendant constitutes a Due Process Clause violation because the Constitution requires that people be notified of laws that affect their liberty. In Lambert, the Supreme Court reversed the conviction of a woman who violated a municipal ordinance making it illegal for a convicted felon to remain in Los Angeles for more than five days without registering with the police. Id. at 226, 230. The Court held that the felon registration ordinance violated due process when applied to a person who had "no actual knowledge of his duty to register . . . ." Id. at 227.

Lambert is a very limited exception to the general principle that ignorance of the law is not an excuse. United States v. Meade, 175 F.3d 215, 225 (1st Cir. 1999). "[T]he Court has steadfastly resisted efforts to extend Lambert 's reach, and has gone so far as to suggest that the Lambert dissent correctly characterized the majority opinion as 'an isolated deviation from the strong current of precedents--a derelict on the waters of the law.'" Id. citing Texaco, Inc. v. Short, 454 U.S. 516, 537 n. 33 (1982) (internal citations

omitted). The exception applies when 1) the defendant's conduct was "wholly passive," 2) the defendant was "unaware of any wrongdoing" (i.e., the default was "entirely innocent"), and 3) there are no circumstances that "move [him] to inquire as to the necessity of registration." Lambert, 355 U.S. at 228-29. Defendant's case does not fit within the exception. Defendant was well aware of that failing to register was a "wrongdoing" due to the fact that he had been notified multiple times of his obligation under state law.

The repeated notice to Defendant of his obligation to register is therefore adequate notice under SORNA. Defendant's motion to dismiss on this ground fails also.

D. Commerce Clause

Defendant contends that SORNA has no nexus whatsoever to interstate commerce and is therefore unconstitutional under the Commerce Clause. Defendant's argument only makes sense in relation to the individual component of SORNA, as opposed to the state component, because the state regulations fall under the Spending Clause. See Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981) ("[O]ur cases have long recognized that Congress may fix the terms on which it shall disburse federal money to the States."). States lose a portion of their federal funding if they fail to comply with the state component of SORNA. 42 U.S.C. § 16925(a). Therefore, this Court will only address Defendant's Commerce Clause argument as it relates to the individual component of SORNA.

The Constitution does not grant Congress a general police power. See U.S. Const. amend. X; United States v. Lopez, 514 U.S. 549, 567 (1995). The general police power is instead reserved to the states. Id. Article I, section 8 of the Constitution,

however, grants Congress the power to regulate commerce within and between the states. U.S. Const. art. I, § 8, cl. 3. In Lopez, the Supreme Court outlined the three areas under which legislation must fall to be within Congress' Commerce Clause power. 514 U.S. at 558-59. Congress may regulate (1) the use of the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and (3) those activities that substantially affect interstate commerce. Id. A statute need only fit within one of these prongs to be constitutional under the Commerce Clause. Id.

In considering the constitutionality of the individual component of SORNA, the issue is whether the statute's jurisdictional element, the requirement that a defendant "travel[] in interstate or foreign commerce,"[7] brings the statute under one of the prongs described above. See 18 U.S.C. § 2250(a)(2)(B); Lopez, 514 U.S. at 558-59. District courts that have considered the question have found that the statute falls under either the second[8] or third prong.[9] Only one court thus far has found that section 2250 does not lie under any of the prongs and is therefore unconstitutional under the Commerce Clause. United States v. Powers, No. 07-221, 2008 WL 1757721 (M.D. Fla. Apr. 18, 2008). Because this Court finds that section 2250 is clearly constitutional under the second prong, it need not address in detail the arguments under the third prong. As the Supreme Court stated in Lopez, instrumentalities of commerce include "persons or things in

[7] The alternative jurisdictional 'hook' in section 2250 is the defendant's conviction for sex offenses under a federal law. 18 U.S.C. § 2250(a)(2)(A). As Defendant was convicted under Massachusetts law, the federal law jurisdictional element is not relevant to this case.

[8] These courts include: United States v. Howell, No. 07-2013, 2008 WL 313200, at *8 (N.D. Iowa Feb. 1, 2008); United States v. Elliott, No. 07-14059, 2007 WL 4365599, at *3 (S.D. Fla. Dec. 13, 2007); Gonzales, 2007 WL 2298004, at *9; Mason, 510 F.Supp.2d at 932; United States v. Templeton, No. 06-291, 2007 WL 445481, at *4 (W.D. Okla. Feb. 7, 2007).

[9] These courts include: United States v. Utesch, No. 07-105, 2008 WL 656066, at *14 (E.D. Tenn. Mar. 6, 2008); United States v. Holt, No. 07-0630, 2008 WL 1776495, at *3 (S.D. Iowa Apr. 14, 2008); United States v. Hacker, No. 07-243, 2008 WL 312689, at *2 (D. Neb. Feb. 1, 2008); United States v. Dixon, No. 07-72, 2007 WL 4553720, at *5 (N.D. Ind. Dec. 18, 2007); United States v. Brown, No. 07-485, 2007 WL 4372829, at *2-3 (S.D.N.Y. Dec. 12, 2007); May, 2007 WL 2790388, at *7; United States v. Madera, 474 F.Supp.2d 1257, 1265 (M.D. Fla. 2007).

interstate commerce." 514 U.S. at 558. Here, SORNA, by regulating sex offenders who travel in interstate commerce, clearly regulates "persons ... in interstate commerce." See id.

Nevertheless, Defendant contends that the actual matter being regulated, registration, has no connection to interstate commerce and is entirely an intrastate matter. Section 2250, however, is focused precisely on the movement of persons in interstate commerce. Firstly, the matter being regulated is the registration of a class of persons – the class of sex offenders. Secondly, the function of this statute is to regulate the movement of sex offenders in interstate commerce. See United States v. Hinen, 487 F.Supp.2d 747, 752 n.5 (W.D. Va. 2007). SORNA, including the criminal component, prevents sex offenders from being lost in the cracks *between* state regulations, a matter which is beyond the power of any one state to comprehensively address. See United States v. Reynard, 473 F.3d 1008, 1023-24 (9th Cir. 2007) ("Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power . . . ."). SORNA, by its terms, does not focus on merely intrastate matters.

Moreover, the jurisdictional element limits section 2250 to *only* those actions within federal jurisdiction. Despite Defendant's contentions, this jurisdictional element clearly distinguishes the statute at hand from the statutes struck down by the Supreme Court in Lopez and United States v. Morrison. See Morrison, 529 U.S. 598, 611-12 (2000); Lopez, 514 U.S. at 562. In both those cases, the Supreme Court criticized statutes for not containing any express jurisdictional element. Id. Not only does section 2250 have a jurisdictional element, but the jurisdictional element requires proof of interstate activity.

A mere statement in a statute that interstate commerce is impacted may not be enough to establish an adequate nexus. See United States v. Cardoza, 129 F.3d 6, 11 (1st Cir. 1997); United States v. Lawrance, No. 07-166, 2007 U.S. Dist. LEXIS 75518, at *16-17 (W.D. Okla. Sep. 5, 2007). Here, however, the jurisdictional element requires proof that a defendant "travel[ed] in interstate … commerce" as an element of the crime. See 18 U.S.C. § 2250. As the First Circuit stated in Cardoza, "it remains the law that where a federal criminal statute contains a jurisdictional element requiring proof that an object was 'in or affecting' commerce, the government need only meet the 'minimal nexus' test . . . ." 129 F.3d at 11. A defendant's use of the channels of interstate commerce to travel between states meets that minimal nexus.

In addition to attacking the adequacy of the jurisdictional element, Defendant argues that the underlying danger is a purely non-economic, intrastate matter. Defendant's argument, however, that protecting the public from sex offenders is purely an intrastate police power is beside the point. It does not matter whether the threat represented by an unregistered sex offender affects only those within the state where the sex offender is eventually located. The Supreme Court in Lopez specifically noted that, under the second prong, Congress may regulate "persons … in interstate commerce, even though the threat may come only from intrastate activities." 514 U.S. at 558.

Lastly, Defendant argues that section 2250 lacks the necessary link between the act of traveling in interstate commerce and the regulated activity of failing to register. Unless the courts require a link, Defendant reasons, Congress could federalize any crime by simply adding the element that the defendant have traveled in interstate commerce at some point. In particular, Defendant avers that, in order to satisfy the Commerce Clause,

the statute must require the defendant to travel in interstate commerce with the *intent* not to register.

Defendant raises a valid concern, but overstates the problem. There is no constitutional requirement under the second prong that the "person[] or thing[] in interstate commerce" travels with intent or is moved with intent to commit a crime. See id. In fact, a plethora of statutes lacking an element of intent have been found constitutional under the second prong. The series of statutes which turn the possession of a gun into a federal offense if the gun has traveled in interstate commerce is paradigmatic. See, e.g., 18 U.S.C. § 922; United States v. Teleguz, 492 F.3d 80, 87 (1st Cir. 2007); United States v. Diaz-Martinez, 71 F.3d 946, 953 (1st Cir. 1995); Cardoza, 129 F.3d at 10-11. Defendant cites no legal authority to directly support his contention that intent is a necessary element of the second prong. Although Defendant lists statutes which include an intent element, he cites to no case or law stating that intent is required.

Finally, the link between failing to register and traveling in interstate commerce under section 2250 is hardly as tenuous as Defendant warns. SORNA requires that the defendant register within three days of traveling in interstate commerce. 42 U.S.C. § 16913(c). Thus, the regulated activity and jurisdictional element are quite closely connected.

For all these reasons, this Court finds that section 2250 is a valid exercise of congressional power under the Commerce Clause.

E. Tenth Amendment

Defendant asserts yet another constitutional argument against SORNA. He argues that SORNA violates the Tenth Amendment by forcing the states to register sex

offenders before they voluntarily comply with SORNA. It is well settled that the Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering federal law. See Printz v. United States, 521 U.S. 898, 935 (1997). As described above, the state component of SORNA is voluntary. States have the option not to comply, at the risk of losing a portion of their federal funding. See 42 U.S.C. § 16925(a); South Dakota v. Dole, 483 U.S. 203, 206-07 (1987). The criminal component of SORNA, however, falls under the Commerce Clause and is not voluntary.

Nevertheless, section 2250 does not require any additional effort on the part of Rhode Island. Rhode Island, like all other states, already has registration requirements in place. See Smith v. Doe, 538 U.S. at 90. Section 2250 merely adds a federal penalty to failure to abide by state registration laws. This is a far cry from the commandeering of state functions which the Supreme Court found unconstitutional in Printz. See 521 U.S. at 935. Thus, SORNA conforms to the requirements of the Tenth Amendment as well.

## IV. Conclusion

Defendant's arguments that SORNA is unconstitutional under the Due Process Clause, the Commerce Clause, the Ex Post Facto Clause and the Tenth Amendment do not pass muster. Moreover, this Court finds that Defendant received adequate notification under the law. This Court has considered Defendant's remaining arguments and finds them without merit. Accordingly, Defendant's motion to dismiss is denied.

SO ORDERED

Mary M. Lisi
Mary M. Lisi
United States District Judge
May 8, 2008